## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN LEAM, GREG DRAYTON, SHANNON MAHONEY, SAMANTHA METTLER, and FRANCESCA MIGNOSI, on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>PEPSICO, INC. and THE GATORADE COMPANY,<br><br>    *Defendants*. | Case No.: 7:26-cv-04258-JGLC-JCM<br><br><br>**AMENDED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CONSOLIDATE CASES, APPOINT INTERIM CO-LEAD CLASS COUNSEL AND EXECUTIVE COMMITTEE** |
| MICHAEL WALSH, on behalf of himself and all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>PEPSICO, INC. and THE GATORADE COMPANY,<br><br>    *Defendants*. | Case No.: 7:26-cv-05191-JGLC-JCM |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     PROCEDURAL BACKGROUND.............................................................................. 3

III.    PLAINTIFFS' ALLEGATIONS ................................................................................ 4

IV.     ARGUMENT .............................................................................................................. 5

        A.      Consolidation of the Related Actions is Appropriate ........................................... 5

        B.      The Court Should Appoint Proposed Interim Class Counsel ............................... 7

                1.      Legal Standard Under Federal and New York Law................................... 7

                        a.      A Class Counsel Leadership Structure is Appropriate Given
                                the Complexity of the Claims ........................................................... 8

                        b.      The Proposed Class Counsel Has Performed Substantial
                                Work in Investigating this Action.................................................. 10

                        c.      Proposed Class Counsel Have Substantial Knowledge About
                                and Are Experienced in Leading and Successfully Resolving
                                Consumer Protection Class Actions............................................... 11

                        d.      Proposed Class Counsel are Committed to Representing and
                                Advancing the Interests of the Class............................................... 21

V.      CONCLUSION......................................................................................................... 22

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*All Wrapped Up Signs and Graphix LLC v. Visa Inc.*,
 2024 WL 4891900 (S.D.N.Y. Nov. 26, 2024) ................................................................ 9

*Ayerdi v. Zeta Glob. Holdings Corp.*,
 No. 25 Civ. 5780, 2025 WL 2916293 (S.D.N.Y. Oct. 14, 2025) ................................ 9

*Fero v. Excellus Health Plan, Inc.*,
 502 F. Supp. 3d 724 (W.D.N.Y. 2020) ......................................................................... 9

*Gordon v. Chipotle Mexican Grill, Inc.*,
 No. 17-cv-1415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ................................ 11

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
 258 F.R.D. 260 (S.D.N.Y. 2009) ................................................................................. 9

*In re LIBOR–Based Fin. Instruments Antitrust Litig.*,
 11 Md. 2262, 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011) ...................................... 8

*In re Linerboard Antitrust Litig.*,
 292 F. Supp. 2d 644 (E.D. Pa. 2003) ........................................................................... 9

*In re Luxottica Group S.p.A. Sec. Litig.*,
 233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................... 11

*In re Nurture Baby Food Litig.*, No. 1:21-CV-01217-MKV, 2025 WL 918927 (S.D.N.Y. Mar.
 26, 2025) ....................................................................................................................... 5

*In re Shop-Vac Mktg. & Sales Pracs. Litig.*,
 No. 2380, 2013 WL 183855 (M.D. Pa. Jan. 17, 2013) ........................................... 7, 8

*In re Terazosin Hydrochloride Antitrust Litig.*,
 220 F.R.D. 672 (S.D. Fla. 2004) ............................................................................... 11

*Johnson v. Celotex Corp.*,
 899 F.2d 1281 (2d Cir. 1990) ...................................................................................... 5

*KGK Jewelry LLC v. ESDNetwork*,
 2014 WL 7333291 (S.D.N.Y. Dec. 24, 2014) ............................................................. 5

*M & T Mortg. Corp. v. White*,
 2012 WL 715896 (E.D.N.Y. Feb. 14, 2012) ............................................................... 5

*MacAlister v. Guterma*,
 263 F.2d 65 (2d Cir. 1958) .......................................................................................... 5

*Mantikas v. Kellogg Co.*,
 910 F.3d 633 (2d Cir. 2018) ...................................................................................... 15

**TABLE OF AUTHORITIES (cont'd.)**

**Page(s)**

*Outten v. Wilmington Tr. Corp.*,
    281 F.R.D. 193 (D. Del. 2012) ........................................................................... 11

*Patane v. Nestle Waters N. Am., Inc.*,
    314 F. Supp. 3d 375 (D. Conn. 2018) ................................................................... 5

*Sallustro v. CannaVest Corp.*,
    93 F. Supp. 3d 265 (S.D.N.Y. 2015) .................................................................. 11

*Stone v. Agnico-Eagle Mines Ltd.*,
    280 F.R.D. 142 (S.D.N.Y. 2012) ......................................................................... 5

*Venticinque v. Back to Nature Foods Co.*,
    2024 WL 3385136 (2d Cir. 2024) ..................................................................... 15

**Statutes**

California Civil Code
    §§ 1750, *et seq.*; ............................................................................................... 4

California's Business & Professions Code
    §§ 17200, *et seq.* ............................................................................................... 4
    §§ 17500, et seq. ................................................................................................. 4
    §§ 17501, *et seq.* ............................................................................................... 4

Illinois Consumer Fraud and Deceptive Business Practices Act,
    815 ILCS 505/1, *et seq.* ..................................................................................... 4

New York's General Business Law
    § 349 ................................................................................................................... 4
    § 350 ................................................................................................................... 4

North Carolina Unfair and Deceptive Trade Practices Act,
    N.C. Gen. Stat. § 75-1.1, *et seq.* ....................................................................... 4

Pennsylvania Unfair Trade Practices and Consumer Protection Law,
    73 P.S. §§ 201-1, *et seq.* .................................................................................... 4

**Rules**

Federal Rules of Civil Procedure
    Rule 23(g) ...................................................................................................... 7, 11
    Rule 23(g)(1)(A) .................................................................................. 8, 10, 11, 21
    Rule 23(g)(3) ...................................................................................................... 3, 7
    Rule 23(g)(1)(A)(i)–(iv) ......................................................................................... 8
    Rule 23(g)(4) ...................................................................................................... 7, 8
    Rule 41(a)(1)(A)(i) ................................................................................................. 3
    Rule 42(a) .......................................................................................................... 2, 5

**TABLE OF AUTHORITIES (cont'd.)**

**Page(s)**

**Treatises**

MANUAL FOR COMPLEX LITIGATION (FOURTH)
  § 21.11 (2004) ................................................................................................ 8

PREREQUISITES TO CLASS ACTION; PRESENT LAW,
  Siegel, N.Y. Prac. § 141 (6th ed.) ................................................................ 7

Pursuant to Federal Rules of Civil Procedure ("Rule(s)") 42(a) and 23(g), Plaintiffs JOHN LEAM, GREG DRAYTON, SHANNON MAHONEY, SAMANTHA METTLER, FRANCESCA MIGNOSI, and MICHAEL WALSH (collectively, "Plaintiffs"), in the above-captioned actions, by and through their respective attorneys, hereby submit this Amended Memorandum of Law in support of their Amended Motion to Consolidate and Appoint Interim Co-Lead Class Counsel.

## I.    INTRODUCTION

Undersigned counsel filed four similar class actions before this Court and other courts across the nation. They have agreed to self-organize and coordinate the prosecution of this litigation before this Court: *Leam, et al. v. PepsiCo, Inc., et al.*, No. 7:26-cv-04258 (S.D.N.Y. May 21, 2026) (the "*Leam* Action"); *Walsh v. PepsiCo, Inc.*, No. 7:26-cv-05191 (S.D.N.Y. June 18, 2026) (the "*Walsh* Action"); *Darr v. PepsiCo, Inc., et al.*, N.D. Ill., No. 1:26-cv-06075 (the "*Darr* Action"); and *Kononenko v. PepsiCo, Inc., et al.*, N.D. Cal., No. 5:26-cv-05731-EJD (the "*Kononenko* Action") (collectively, the "Related Actions"). Plaintiffs in the *Darr* and *Kononenko* Actions have voluntarily dismissed their cases without prejudice, and their counsel have appeared on behalf of Plaintiffs in the *Leam* Action.

The Related Actions are proposed consumer protection class actions against Defendants PepsiCo, Inc., The Gatorade Company, and Stokely-Van Camp, Inc. (collectively, the "Defendants") arising out of mislabeling on Gatorade products which gives rise to violations of state and common law causes of action. The complaints in *Leam* (ECF No. 1), *Walsh* (ECF No. 1), *Darr* (ECF No. 1); and *Kononenko* (ECF No. 1-1) (collectively, the "Complaints generally allege that Defendants falsely and misleadingly label and market certain Gatorade products as free from artificial ingredients, including through "No Artificial Flavors" and related representations, despite the alleged presence of artificial ingredients, and further allege that the label and marketing misrepresent that the Products "hydrate[] better than water," when they do not.

Each of the Complaints arises out of the same facts, against the same or similar Defendants, on behalf of the same or similar classes of individuals, and seeks similar or overlapping relief. In particular, the two cases pending in this Court, *Leam* and *Walsh* (the "Related Actions"), are ripe for consolidation under Rule 42(a). Accordingly, Plaintiffs request that the Court consolidate the Related Actions pursuant to Rule 42(a).

Consolidation will provide for a prompt resolution in one proceeding and avoid unnecessary serial handling of the cases, duplication of pre-trial proceedings, the risk of inconsistent adjudications, and duplicative discovery and testimony of witnesses testifying on common issues in the Related Actions. Moreover, the consolidation of these matters will conserve judicial resources. As such, the benefits of consolidation are obvious, and there is no recognizable prejudice to any party or the putative class that will result from consolidation. The Related Actions are all in their infancy—each in the pleading stage, where no response has been filed to the Complaints, and none of the Related Actions has progressed to the point where any efficiencies or benefits will be forfeited through consolidation. Consolidating the Related Actions for all purposes will therefore advance the benefits of consolidation and promote the interests of judicial economy and convenience, with no prejudice to the parties and the putative class.

In addition to consolidation, Plaintiffs respectfully request that the Court appoint Blake Hunter Yagman of Yagman PLLC, Michael R. Reese of Reese LLP, and Laurence D. King of Kaplan Fox & Kilsheimer LLP as Interim Co-Lead Class Counsel ("Proposed Interim Co-Lead Class Counsel"), as well as Raphael Janove of Janove PLLC and Valter Malkhasyan of Malk & Pogo Law Group, LLP as members of the Executive Committee ("Proposed Executive Committee") (collectively, "Proposed Class Counsel"). Proposed Class Counsel have significant consumer protection class action experience and possess extensive knowledge of the applicable

law and substantial resources that can be leveraged to litigate this matter efficiently. *See* Yagman PLLC Resume (Exhibit 1), Reese LLP Resume (Exhibit 2), Kaplan Fox & Kilsheimer LLP Resume (Exhibit 3), Janove PLLC Resume (Exhibit 4), and Malk & Pogo Law Group, LLP Resume (Exhibit 5) (collectively, the "Proposed Class Counsel Resumes") filed concurrently herewith. In addition, each of the firms comprising Proposed Interim Co-Lead Class Counsel has significant experience working collaboratively in similar consumer class actions.

After extensive investigation, research, and discussions regarding this matter, these lawyers and their firms have self-organized and have reached an agreement to work together, some have worked together extensively in the past, and all have a proven track record of success in class action cases that will be of great benefit to the proposed class. Appointment of Proposed Class Counsel will promote efficiency, conserve judicial resources, and create a unified voice for Plaintiffs and putative class members that will streamline this litigation from its outset, with a team capable of taking the case to trial, if necessary.

## II.    PROCEDURAL BACKGROUND

Since the filing of the pending Motion to Consolidate Cases, *see* ECF No. 7, counsel across the Related Actions have elected to put forth an agreed-upon proposed leadership structure rather than serial or competing applications. Accordingly, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), Plaintiffs in *Darr* and *Kononenko* have voluntarily dismissed the cases pending in the Northern District of Illinois and Northern District of California. *See Darr*, ECF No. 14; *Kononenko*, ECF No. 16. Plaintiffs' counsel in *Leam* and *Walsh* have withdrawn, without prejudice, the pending request for appointment of Interim Co-Lead Class Counsel contained in ECF No. 7. This joint motion under Fed. R. Civ. P. 23(g)(3) presents an amended and unified leadership structure, as follows.

## III.    PLAINTIFFS' ALLEGATIONS

Defendants manufacture, distribute, advertise, and otherwise facilitate the sale of the best-selling sports hydration drink in the United States, Gatorade. Defendant PepsiCo, Inc. owns The Gatorade Company, and is headquartered in Purchase, New York within this District.

Each of the Related Actions arises from Defendants' alleged misrepresentations regarding specific Gatorade products which are highlighted in the Complaints, including that these Gatorade products misrepresent and omit information regarding the nature of the Gatorade products and their inclusion of artificial ingredients when labeling warrants the contrary, as well as that Gatorade products "hydrate[] better than water" (also according to labels) when they do not.

Accordingly, Plaintiffs and putative class members have been injured under state and common law causes of action which include: (1) deceptive acts and practices under New York's General Business Law § 349; (2) false advertising under New York's General Business Law § 350; (3) California's Unfair Competition Law, California's Business & Professions Code §§ 17200, *et seq.*; (4) California's False Advertising Law, California's Business & Professions Code §§ 17500, 17501, *et seq.*; (5) California's Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*; (6) Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; (7) North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*; and (8) Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq*. The Related Actions bring the aforementioned similar claims against Defendants on behalf of overlapping classes involving individuals injured by Defendants' uniform, nationwide mislabeling conduct.

## IV.    ARGUMENT

### A.    Consolidation of the Related Actions is Appropriate

Rule 42(a) authorizes a court to consolidate separate related actions if the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958) ("The power to order consolidation prior to trial falls within the broad inherent authority of every court") (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

"Consolidation of actions under Rule 42(a) may be ordered if they involve a common question of law or fact. The decision to consolidate is left to the sound discretion of the district court." *M & T Mortg. Corp. v. White*, 2012 WL 715896, at *1 (E.D.N.Y. Feb. 14, 2012); *see also Stone v. Agnico-Eagle Mines Ltd.*, 280 F.R.D. 142, 143 (S.D.N.Y. 2012) (a court has "broad discretion to consolidate actions under Rule 42(a).") (citing *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir. 1990)). "Consolidation is warranted where it promotes 'judicial economy' and serves to eliminate . . . the danger of inconsistent verdicts." *KGK Jewelry LLC v. ESDNetwork,* 2014 WL 7333291, at *2 (S.D.N.Y. Dec. 24, 2014) (citations omitted); *Johnson*, 899 F.2d at 1284 (considerations of judicial economy weigh in favor of consolidation).

The need for consolidation is clear. The Related Actions arise out of the same mislabeling allegations, involve the same Defendants, assert the same or similar causes of action, and seek similar relief. The questions of law or fact among the Related Actions are nearly identical. Consolidation of the Related Actions would avoid inconsistent rulings, promote judicial economy, and assist in facilitating the resolution of this litigation. Class action lawsuits have consistently— and recently—been consolidated, including consumer protection class action litigation. *See*, *e.g.*, *In re Nurture Baby Food Litig.*, No. 1:21-CV-01217-MKV, 2025 WL 918927 (S.D.N.Y. Mar. 26, 2025) (consolidated case); *Patane v. Nestle Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 377 (D. Conn. 2018) (same). As such, these Related Actions should be consolidated.

Further, consolidation of the Related Actions will promote efficiency and judicial economy, benefit the class by bringing more potential class representatives to bear, and avoid the need for serial resolutions. For instance, consolidation of the Related Actions will simplify discovery, pretrial motions (avoiding duplicative motion to dismiss briefings and hearings that would otherwise be imminent), class certification issues, and other case management issues, especially as all of the cases are at their procedural inception. The witnesses, including experts, will be largely duplicative in each of the Related Actions. As both of the Related Actions involve similar allegations and factual questions, Plaintiffs in the Related Actions will require depositions of the same persons and discovery of the same documents. Absent consolidation, all parties will be subjected to duplicative discovery and witnesses will face multiple, redundant depositions, resulting in inefficiencies and economic waste. Accordingly, consolidation will minimize the cost of pre-trial discovery, enhance trial court efficiency, and avoid duplication of evidence. Consolidating these actions into one lawsuit will also avoid unnecessary costs and delay because many of the same legal and factual issues will only have to be decided once, by this Court, instead of multiple times.

Finally, consolidation would have no adverse effect on any party or the putative class. Unlike in situations where any one plaintiff may have had to take great effort to discover and prosecute his or her claims before any others (including independent research of facts and determination of the legal basis for claims), all Plaintiffs here are similarly situated.

As such, there would be no prejudice to any Plaintiff's case or claims by consolidation, nor would any benefits of consolidation be lost on any Plaintiffs. Conversely, there would be many benefits gained by consolidation, including the conservation of judicial resources, the pooling of counsel resources and experience, and the comprehensive disposition of litigation as discussed

herein. Plaintiffs respectfully request consolidation of the Related Actions into the *Leam* Action's docket, as well as renaming the consolidated action, "*In re Gatorade Marketing & Sales Practices Litigation.*"

**B.    The Court Should Appoint Proposed Interim Class Counsel**

**1.    Legal Standard Under Federal and New York Law**

The appointment of interim class counsel at an early stage of the litigation ensures that the interests of all plaintiffs and class members are properly represented and that the litigation has the necessary leadership in place to move matters forward in a diligent and efficient fashion. Here, counsel for the Plaintiffs are particularly well-suited to lead this case.

"When several attorneys are on the scene to represent the class, and come from different firms, there may occasionally arise some dispute as to who will control the litigation on the class's side (subject, of course, to judicial oversight). This can be resolved by the court by motion or *sua sponte* . . . ." PREREQUISITES TO CLASS ACTION; PRESENT LAW, Siegel, N.Y. Prac. § 141 (6th ed.). In Federal Court, appointment of interim class counsel is governed by Fed. R. Civ. P. 23(g).

Rule 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Rule 23(g)(4) mandates that class counsel "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). "Rule 23(g)(3) of the Federal Rules of Civil Procedure provides that the Court 'may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.'" *In re Shop-Vac Mktg. & Sales Pracs. Litig.*, No. 2380, 2013 WL 183855, at *1 (M.D. Pa. Jan. 17, 2013) (quoting Fed. R. Civ. P. 23(g)). Early appointments are especially beneficial in complex cases because they help to "clarif[y] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class

certification, and negotiating settlement." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.11 (2004); *see also*, *e.g.*, *In re LIBOR–Based Fin. Instruments Antitrust Litig.*, 11 Md. 2262, 2011 WL 5980198, at *2 (S.D.N.Y. Nov. 29, 2011) ("The designation of interim class counsel is especially encouraged in cases . . . where there are multiple, overlapping class actions that require extensive pretrial coordination.") (citing *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006)).

Rule 23(g)(1)(A), which addresses the appointment of class counsel, provides the factors the Court must consider:

(i)     the work counsel has done in identifying or investigating potential claims in the action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)   counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *see also In re Shop-Vac Mktg. & Sales Pracs. Litig.*, 2013 WL 183855, at *1 ("The same factors governing the appointment of class counsel [at the class certification stage] apply when appointing interim class counsel.").

As discussed below, each of the relevant Rule 23(g) factors demonstrates that the Proposed Class Counsel are best able to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

### a.      A Class Counsel Leadership Structure is Appropriate Given the Complexity of the Claims

Plaintiffs' counsel believe that a proposed structure is the most efficient way to successfully litigate the consolidated action and receive the best recovery for Plaintiffs and the class. Given the complexity of the claims, the number of claims alleged, and the sophistication of the Defendants

involved, this structure will maximize recovery, while ensuring efficient prosecution of the claims. Because Defendants are sophisticated entities with substantial resources, the Proposed Class Counsel structure ensures that Plaintiffs will have sufficient resources to litigate the consolidated action. *See In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 271 (S.D.N.Y. 2009) ("In complex cases, courts may appoint a plaintiff leadership structure to coordinate the prosecution of the litigation."); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003) (explaining that courts may "recognize steering committees of lawyers" as means to promote efficiency of class counsel). Additionally, Courts in this Circuit have approved leadership structures similar to the one proposed here, appointing Interim Lead Counsel supported by a small Executive Committee. *See*, *e.g.*, *Ayerdi v. Zeta Glob. Holdings Corp.*, No. 25 Civ. 5780, 2025 WL 2916293, at *3 (S.D.N.Y. Oct. 14, 2025) ("This Court is likewise mindful of the potential complexity of this litigation and that it may take turns that make it useful for co-lead counsel to look to an executive committee as a useful resource."); *All Wrapped Up Signs and Graphix LLC v. Visa Inc.*, 2024 WL 4891900 at *1 (S.D.N.Y. Nov. 26, 2024) (appointing two interim co-lead counsel and a two-member interim executive committee); *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 746 (W.D.N.Y. 2020) (similar); *In re Huel Heavy Metal Litigation*, 2025-cv-05783 (E.D.N.Y. May 29, 2026 Minute Order) (similar).

During all phases of the litigation, the Proposed Class Counsel will, among other things: (i) organize and supervise the efforts of Plaintiffs' counsel in a manner to ensure that the necessary pretrial preparation is conducted effectively, efficiently, expeditiously, and economically; (ii) delegate work responsibilities and monitor the activities of all counsel to assure that schedules are met and unnecessary expenditures of time and expense are avoided; (iii) speak for Plaintiffs at all Court conferences and hearings; (iv) initiate and conduct discussions and negotiations with

counsel for Defendants on all matters, including settlement; (v) determine (after consultation with other co-counsel as may be appropriate) and present in briefs or oral argument to the Court and opposing parties the position of the Plaintiffs on all matters arising during the proceedings; (vi) enter into stipulations with opposing counsel as necessary for the conduct of the litigation; (vii) select, consult with, and employ experts, as necessary, for Plaintiffs; (viii) initiate and conduct discovery on Plaintiffs' behalf, and coordinate its efficiency; and (ix) perform such other duties in connection with prosecuting the claims in this action.

###### b. The Proposed Class Counsel Has Performed Substantial Work in Investigating this Action

Under the first Rule 23(g)(1)(A) factor, the Proposed Class Counsel has committed appropriate, yet substantial, time and resources to organizing and working toward the advancement of this litigation. This work undertaken to date includes investigating and researching the potential legal theories and claims at issue, researching and reviewing information relating to the factual underpinnings of the conduct as alleged and this litigation, and communicating with affected persons impacted by Defendants' conduct.

Proposed Class Counsel continue to perform substantial work that has been (and will be) valuable to the class as the case moves forward. This includes but is not limited to: (a) reviewing consumer communications concerning the Defendants' conduct; (b) engaging in ongoing communications with putative class members; (c) investigating the veracity (or lack thereof) of Defendants' marketing claims; (d) researching potential claims arising from Defendants' misrepresentations and omissions, as well as the defenses thereto; and (e) using this research to begin preparing a detailed, consolidated class action complaint. The Proposed Class Counsel have collectively conducted all of the work necessary to prosecute this consolidated litigation thus far, and they stand ready, willing, and able to continue to devote the substantial effort and resources

(including the advancement of costs) necessary for furthering the claims of Plaintiffs and the putative class.

              **c.**        **Proposed Class Counsel Have Substantial Knowledge About and Are Experienced in Leading and Successfully Resolving Consumer Protection Class Actions**

Proposed Class Counsel also satisfy the second and third Rule 23(g)(1)(A) factors.

Class action cases present unique and novel issues of fact and law that are always evolving. *See*, *e.g.*, *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (noting that class actions involve "difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation"); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) (noting that class actions "are particularly risky, expensive, and complex"). Because class action mislabeling cases involving food products are complex and require an understanding of the technical issues, ingredients within food products, the sophisticated nature of federal and state law, preemption issues, and knowledge of evolving industry standards, appointing Proposed Class Counsel who are experienced in such complex class action litigation is in the best interest of the putative class. *See*, *e.g.*, *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 279 (S.D.N.Y. 2015) (appointing experienced lead counsel); *Outten v. Wilmington Tr. Corp.*, 281 F.R.D. 193, 200 (D. Del. 2012) ("Experience and knowledge of the law is of the utmost importance when determining lead counsel."). Plaintiffs' counsel and their respective law firms are highly qualified to lead the consolidated action and should be appointed pursuant to Fed. R. Civ. P. 23(g). *See generally* Proposed Class Counsel Resumes; *see also id.*; *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (finding the "most persuasive" factor in choosing lead counsel to be proposed counsel's "experience in, and knowledge of, the applicable law in this field").

Additionally, the Related Actions are among the first to challenge Defendants' mislabeling conduct. Proposed Class Counsel have significant experience litigating cases of first impression as well as cases which include the use of consumer protection issues across an array of different industries.

### *Blake Hunter Yagman of Yagman PLLC*
(Proposed Interim Co-Lead Class Counsel)

Blake Hunter Yagman (Partner and Founder) has represented plaintiffs in class action and litigation for nearly a decade.[1] Mr. Yagman currently has leadership positions or is sole counsel in significant class action and multidistrict litigation cases in courts around the country.

Over the course of his career, Mr. Yagman has built a reputation of innovative and forward legal thinking combined with the discipline of a practice shaped by one of the largest class action law firms in the world and one of New York's elite litigation boutiques. Mr. Yagman has litigated high-stakes cases—including cases of first impression—involving new and emerging legal issues, including algorithmic price fixing, surreptitious collection of biometric data, deployment of surveillance pricing, implementation of evolving digital tracking technologies, and challenging various forms of complex price manipulation.

Mr. Yagman has a wealth of experience from involvement in class action litigation, including in court appointed roles or as sole counsel representing classes of consumers in on-going cases, including in this District: *In re CityMD Data Privacy Litig.*, No. 2:24-cv-06972 (D.N.J. 2024) (appointed interim co-lead counsel on behalf of patients of a large chain of urgent care centers who allegedly had their PII/PHI sold to third parties from digital tracking on a website); *Ring v. New York Health and Hospitals Co.*, No. 651961/2026 (Sup. Ct. N.Y. Co. 2026) (appointed

---

[1] Mr. Yagman's firm resume is attached herewith at Exhibit 1.

as interim co-lead counsel in a multi-million victim data breach at the largest municipal hospital in the United States); *In re Zeta Global Data Privacy Litig.*, No. 1:25-cv-05780 (S.D.N.Y. 2025) (appointed to the executive committee on behalf of a class of over 200 million consumers who allegedly had their PII collected and collated from digital tracking on websites into dossiers, and sold online by a data broker); *Gonzalez v. Outliers, Inc.*, No. 1:25-cv-10790-JLR (S.D.N.Y. 2025) (sole counsel representing over seven million purchasers of mislabeled supplement products); and *Maiman v. PETCO Health and Wellness Co., Inc.*, No. 1:26-cv-01520-HG (E.D.N.Y. 2026) (counsel representing millions of purchasers of misbranded grain free dog food products).

Mr. Yagman is very involved in his community including representing fellow queer small business owners in variety of different types of litigation, is a Founding Member of the Theodore Roosevelt Presidential Library and was recently named to the D.C. Bar Association Pro Bono Honor Roll for public service. If appointed, Mr. Yagman is supported by Yagman PLLC's Of Counsel attorney Lina Kaisey who graduated from Harvard Law School in 2014 and was an associate at Kirkland & Ellis as well as Partner Allen Nathan Neumark who has extensive complex litigation experience over nearly a decade long career; both would be contributing on behalf of Yagman PLLC.

### *Michael Reese of Reese LLP*
(Proposed Interim Co-Lead Class Counsel)

Michael R. Reese and his firm of Reese LLP represent plaintiffs in consumer protection class action litigation and are pioneers in food-related class actions.[2] Mr. Reese and his firm have successfully litigated numerous food cases, having won tens of millions of dollars in recovery for consumers, as well as instituted corporate reform including label changes and product

---

[2] Reese LLP's firm resume is attached hereto as Exhibit 2.

reformulation to remove unhealthy ingredients. Founded in 2008, Reese LLP has offices and attorneys across the United States, including in St. Petersburg, Florida; New York City; Minneapolis, Minnesota; Austin, Texas and, San Francisco and Los Angeles, California.

Mr. Reese is a seasoned litigator with extensive experience in consumer class actions. Before entering private practice in 2000, Mr. Reese served as an assistant district attorney at the Manhattan District Attorney's Office, where he prosecuted both violent and white-collar crimes and tried over twenty-five cases to jury verdict. Mr. Reese has been a member of the New York state bar since 1997 and the Southern District of New York bar since 2002.

In recognition of this fact, Mr. Reese has been appointed as co-lead class counsel in numerous food related class actions, including, but not limited to: *Sharpe v. A&W Concentrate Co.*, case no. 1:19-cv-00768-BMC (E.D.N.Y) (class action based on allegation of deceptively labeled beverages resulting in $15 million class settlement); *McKinley v. Unilever United States, Inc.*, Index No. 805260/2024E (Supreme Court, Bronx County) (class action based on allegation of deceptively labeled food products resulting in $8.85 million class settlement); *Rankins v. Old Lyme Gourmet Co. (d/b/a Deep River Snacks)*, case no. 1:20-cv-1756-ENV (E.D.N.Y.) (class action based on allegation of deceptively labeled food products resulting in $4 million class settlement); *Cicciarella v Califia Farms LLC,* case no. 7:19-cv-08785-CS (S.D.N.Y.) (class action based on allegation of deceptively labeled beverages resulting in $3 million class settlement); *In re Fairlife Milk Products Marketing and Sales Practices Litig*., master case no. 19-cv-3924, MDL 2909, 2020 WL 362788, at *1 (N.D. Ill)(class action based on allegation of deceptively labeled beverages resulting in $21 million class settlement).

Mr. Reese is also an accomplished appellate attorney. Notably, Mr. Reese and his firm are responsible for the leading governing appellate law regarding food-related consumer protection

law in New York, having successfully won appeals before the Second Circuit both in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) and *Venticinque v. Back to Nature Foods Co.*, 2024 WL 3385136 (2d Cir. 2024).

In addition to being an experienced litigator, Mr. Reese is a strong advocate of giving back to the legal community and, as a result, has served as an adjunct professor at Brooklyn Law School where he taught the courses "Class Actions and Other Aggregate Litigation" and "Food Law." Mr. Reese also sits on the advisory boards of UCLA's Food Law and Policy Center as well as Wellness in the Schools, which advocates for nutritional food in public schools in New York City and elsewhere across the United States. Mr. Reese also serves as the President of the Agrifood Law Commission for the Union Internationale des Avocats – a global, non-profit organization focused on human rights.

Mr. Reese is also a leading author on food-related class action law, having been published on the subject extensively in domestic and international food law publications.

Mr. Reese's and his firm's proven track record in consumer protection class action litigation in the food related litigation combined with his trial experience, positions him as a formidable representative for the proposed class in this matter.

### ***Laurence D. King of Kaplan Fox & Kilsheimer LLP***
(Proposed Interim Co-Lead Class Counsel)

Laurence King, a former prosecutor and long-time member of the New York and California bars, is the West Coast Managing Partner of Kaplan Fox and leads its consumer protection practice. Mr. King and Kaplan Fox are highly experienced in complex class actions and multidistrict litigations across the spectrum of cases involving antitrust, securities, consumer protection, and

information privacy laws.[3] Founded in 1954, Kaplan Fox is one of the most established plaintiffs' litigation practices in the country. The National Law Journal has named Kaplan Fox to its list of the nation's top 10 "hot" litigation boutiques and more than half of the firm's partners (including Mr. King) have been rated "Super Lawyers." The firm has thirty-one lawyers and offices in New York, Los Angeles, Oakland, and Chicago.

To date, the firm has recovered more than $5 billion for its clients and classes, including notable matters such as *In re Bank of America Corp. Sec. Deriv., and ERISA Litig.*, No. 1:09-md-020508 (S.D.N.Y.), in which as one of three co-lead counsel, Kaplan Fox recovered $2.425 billion for investors just weeks before trial—one of the largest recoveries in the history of securities class actions; and *In re Air Cargo Shipping Servs., Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y.), in which as one of four co-lead counsel representing direct purchasers alleging violations of antitrust laws, Kaplan Fox recovered more than $1 billion in settlements. Kaplan Fox's West Coast managing partner, Laurence King, served as co-lead counsel in *In re Apple Inc. Device Performance Litigation*, No. 5:18-md-02827 (N.D. Cal.), in which the Court granted final approval of a $310 million settlement.

In appointing Mr. King as co-lead counsel in *In re Apple Device Performance Litigation*, Judge Edward Davila noted that plaintiffs' leadership "demonstrated an ability to cooperate with a range of different interests that span across law firms, practice groups, geography, and gender and introduce[d] smaller firms into the litigation experience." *In re Apple*, No. 5:18-md-02827, ECF No. 99. Mr. King was also recently appointed to lead the prosecution of claims against accounting firms and as a member of the Executive Committee in the *In re FTX Cryptocurrency Exchange Collapse Litig.*, MDL No. 3076 (S.D. Fla.), and has served in leadership roles in

---

[3] Kaplan Fox's firm resume is attached herewith at Exhibit 3.

numerous class actions in courts across the nation for over thirty years. Mr. King and Kaplan Fox also have substantial experience in food labeling cases. *See, e.g., Wolf v. Red Bull GmBH*, No. 13-cv-8008 (S.D.N.Y.) (case settled for $13 million); *Schneider v. Chipotle Mexican Grill, Inc.,* No. 4:16-cv-2200-HSG (N.D. Cal.) (case settled for $6.5 million on eve of trial).

Kaplan Fox has been dedicated to the prosecution of this action to date and will remain so through all stages of litigation, trial, settlement, and appeals. Mr. King will be supported by a dedicated team of attorneys and support staff at Kaplan Fox with pertinent consumer protection experience.

### *Raphael Janove of Janove PLLC*
(Proposed Executive Committee Member)

Raphael Janove and his firm, Janove PLLC, have extensive experience handling class actions, complex litigation and consumer protection claims. Janove PLLC was recently appointed to the Executive Committee in the proposed class action arising out of heavy metal contamination in *In re Huel Heavy Metal Litigation*, No: 1:25-cv-05783-AMD-JAM (E.D.N.Y.). Janove PLLC was appointed Co-Lead Counsel in *In re Wunderkind Privacy Litigation*, No. 1:25-cv-05854 (S.D.N.Y.) and, Raphael Janove, along with co-counsel, was appointed Interim Class Counsel in *Reed v. AINS LLC*, No. 1:25-cv-02991 (D.D.C.). Janove PLLC also is prosecuting other class actions involving foods and supplements, including *Brower et al. v. Colgate-Palmolive Company*, No. 1:25-cv-03348 (S.D.N.Y.), *Cavallaro-Kearins et al. v. Gruns Nutrition, Inc.*, No. 1:25-cv-04998 (S.D.N.Y.), *Sciortino et al. v. Drink LMNT, Inc.*, No. 1:25-cv-03126 (E.D.N.Y.), *Barrales et al. v. Conopco, Inc. d/b/a Unilever*, No. 1:25-cv-10390 (S.D.N.Y.), and *Kenkel et al. v. Church & Dwight Co., Inc.*, No. 1:25-cv-6926 (E.D.N.Y.). In addition, Janove PLLC serves as Additional Consumer Indirect Purchaser Plaintiff Class Counsel in a multidistrict litigation concerning the alleged price fixing practices of major sugar producers and sellers in the United States. *In re*

*Granulated Sugar Antitrust Litigation* (MDL 3110) (D. Minn.). Janove PLLC is also prosecuting a class action lawsuit involving allegations similar to those in this case—the use of artificial citric acid in a beverage. *Vergien et al. v. The Kraft Heinz Company*, No. 1:25-cv-15557 (N.D. Ill.). Mr. Janove has personally led the firm's work in each of these matters.

Mr. Janove began his career as defense counsel at Sullivan & Cromwell LLP, where he worked on high-stakes complex and class litigation. He now uses the insights and experience he gained on the defense side to be more effective attorneys for plaintiffs. Before launching Janove PLLC, Mr. Janove clerked on the U.S. Court of Appeals for the Third Circuit and for the U.S. District Court for the Eastern District of Pennsylvania. Mr. Janove was a partner at Pollock Cohen LLP, where he spearheaded the firm's class action practice and launched its mass arbitration practice. While there, he conceptualized and led novel Lanham Act class action lawsuits on behalf of millions of small businesses, and was appointed co-lead class counsel or lead class counsel in three of the matters, which reached final settlement approval. *See Tipsy Nail Club v. ClassPass*, No. 1:21-cv-08662, ECF No. 118 (S.D.N.Y.); *WeCare RG et al. v. Giftly Inc.*, No. 2:22-cv-02672, ECF No. 52 (E.D. Pa), and *Salon Phoenix Cosmetology LLC et al. v. Groupon*, No. 1:22-cv-07162, ECF No. 41 (N.D. Ill.). Mr. Janove is prosecuting two other Lanham Act class actions. *Gracie Baked LLC, et al. v. GiftRocket, Inc. et al.*, No. 1:22-cv-04019-GRB-VMS (E.D.N.Y.); *Castro et al. v. 7 Cups of Tea, Co. et al.*, No. 1:25-cv-02563-MKB-MMH (E.D.N.Y.).

Mr. Janove continues to represent clients in class actions that he originated at his prior firm, including cases alleging consumer law and privacy violations unique to mobile games, *Prado, et al. v. FunPlus International AG*, No. 4:22-cv-05023 (N.D. Cal.); *Yanez et al. v. FunPlus International AG, et al.*, No. 4:23-cv-2667 (N.D. Cal.); *Kelly v. FunPlus International AG, et al.*, No. 3:23-cv-04122 (N.D. Cal.), and two novel class actions on behalf of civil immigrant detainees

- 18 -

at former county detention centers. *See Ruderman v. McHenry County*, No. 3:22-cv-50115 (N.D. Ill.); *Ruderman v. Kenosha County*, No. 2:23-cv-01336 (E.D. Wis.). In addition, while at Pollock Cohen, Mr. Janove launched a class action alleging privacy violations against Apple, Inc., and the firm was eventually appointed to the Plaintiffs' Steering Committee in the consolidated lawsuit. *In re: Apple Data Privacy Litigation*, No. 5:22-cv-07069-EJD (N.D. Cal.).

Since founding Janove PLLC in February 2024, Mr. Janove has launched dozens of new class matters and represented tens of thousands of clients in mass arbitrations. Janove PLLC will staff this matter with its team, including attorney Liana Vitale, who began her career as defense counsel at Cleary Gottlieb Steen & Hamilton LLP defending high-stakes complex and class litigation. Like Mr. Janove, Ms. Vitale now draws on her defense-side experience to represent plaintiffs more effectively. The firm's experience efficiently and effectively bringing consumer law claims, addressing novel issues, and unique ability to leverage insights from its mass arbitration practice and its attorneys' former defense-side work will aid in the prosecution of this action on behalf of the putative classes.[4]

### *Valter Malkhasyan of Malk & Pogo Law Group, LLP*
(Proposed Executive Committee Member)

Valter Malkhasyan is the founding and managing partner of Malk & Pogo Law Group, LLP, a plaintiff-side litigation boutique that prosecutes consumer class actions, mass arbitrations, and other complex civil litigation in federal and state courts across the country, with a particular focus on false advertising, consumer protection, unfair competition, and deceptive marketing claims against national corporate defendants.[5]

Mr. Malkhasyan's experience is particularly relevant here. He played an integral role in

---

[4] Janove PLLC's firm resume is attached herewith at Exhibit 4.

[5] Malk & Pogo Law Group, LLP's resume is attached herewith as Exhibit 5.

*Hezi, et al. v. Celsius Holdings, Inc.*, No. 1:21-cv-09892 (S.D.N.Y.), a beverage-labeling class action alleging that Celsius falsely marketed its beverages as containing "no preservatives" despite the presence of citric acid. That litigation, prosecuted in this District, resulted in a $7.8 million class settlement. The citric-acid labeling experience gained in *Hezi* bears directly on this case, in which Plaintiffs generally allege that Defendants falsely and misleadingly label and market certain Gatorade products as free from artificial ingredients despite the alleged presence of artificial ingredients.

Mr. Malkhasyan also has substantial experience in consumer product labeling litigation in this District and elsewhere. He played an integral role in *Kandel, et al. v. Dr. Dennis Gross Skincare, LLC*, No. 1:23-cv-01967-ER (S.D.N.Y.), a consumer product labeling action alleging that Dr. Dennis Gross Skincare misrepresented the collagen content of its "C+Collagen" product line, which resulted in a $9.2 million class settlement.

Malk & Pogo has already demonstrated its commitment to this litigation. The firm independently investigated, developed, and filed the *Kononenko* Action, the first-filed constituent action in this consolidated litigation, alleging that Defendants' Gatorade products are misleadingly labeled as containing "No Artificial Flavors" and being "Naturally Flavored" despite the presence of manufactured citric acid. That work reflects the initiative, factual investigation, and substantive knowledge of the claims that Rule 23(g) is designed to recognize.

Before co-founding the firm, Mr. Malkhasyan practiced at Clarkson Law Firm, P.C., a nationally recognized plaintiffs' class action firm, where he focused on complex commercial litigation, including false advertising, data privacy, unfair competition, and other consumer protection class actions. There, he worked on significant data-privacy class actions involving some of the largest technology and telecommunications companies in the country, including Microsoft,

Google, Snapchat, and T-Mobile. He has continued to prosecute complex class actions and mass arbitrations on behalf of consumers nationwide. Mr. Malkhasyan is licensed in California and admitted to practice before federal trial and appellate courts across the country, as well as the Supreme Court of the United States. He earned his J.D. from Loyola Law School, Los Angeles, where he completed the Civil Litigation and Advocacy Concentration Program, received a Dean's Merit Scholarship, and served on the Loyola Law Review. He earned his undergraduate degree from the University of Southern California, Marshall School of Business.

If appointed to the Plaintiffs' Executive Committee, Malk & Pogo will devote the time, resources, and focused attention necessary to advance this litigation efficiently and cooperatively. The firm's direct experience with citric-acid labeling claims, consumer product mislabeling cases, and premium-based false advertising theories will materially assist proposed Interim Co-Lead Counsel and benefit the putative class through all phases of the case, including discovery, motion practice, class certification, settlement, trial, and any appeals. Mr. Malkhasyan will also be supported by founding and managing partner Erik Pogosyan, a former defense litigator whose experience representing national insurance carriers, public entities, and businesses provides valuable insight into how corporate defendants evaluate, defend, and seek to resolve complex litigation.

### d. Proposed Class Counsel are Committed to Representing and Advancing the Interests of the Class

As to the fourth Rule 23(g)(1)(A) factor, the Proposed Class Counsel are willing and able to expend the resources necessary to ensure the vigorous prosecution of the claims asserted by the Plaintiffs in this case. All proposed members of the Proposed Class Counsel and their respective law firms are well capitalized and have years of experience prosecuting and self-funding complex class action litigation, including actions against some of the largest companies in the world. *See*

Proposed Class Counsel Resumes. The members of the Proposed Class Counsel have independently advanced millions of dollars to fund expenses in several of their cases, demonstrating a commitment to providing the resources and staffing needed to successfully prosecute class actions. The Proposed Class Counsel are also willing to advance all costs to prosecute this action and see it through completion, including advancing costs for document hosting, expert witnesses (both for liability and damages if necessary), and for trial.

The Proposed Class Counsel, along with their respective firms, have a proven track record of success leading complex class action cases, including consumer fraud matters. The experience here will be no different. Each attorney understands the time, energy, and skill necessary to lead this litigation and all have committed the resources required to ensure the effective and efficient representation of the putative class members. In fact, the Proposed Class Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to this litigation and coordinating among themselves to file this leadership application.

In sum, the Proposed Class Counsel are committed to pursuing the best interests of Plaintiffs and the putative class in an efficient manner. They understand the time and resources necessary to pursue this action to a successful resolution and have already made significant investments of resources and time into the prosecution of these claims.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to grant their motion and (a) consolidate both of the above-captioned Related Actions (as well as any future related actions) into the *Leam* action; (b) rename the consolidated action within the *Leam* docket as "*In re Gatorade Marketing & Sales Practices Litigation*"; and (c) enter an order appointing Blake Hunter Yagman of Yagman PLLC, Michael R. Reese of Reese LLP, Laurence D. King of Kaplan Fox & Kilsheimer

LLP as Interim Co-Lead Class Counsel and Raphael Janove of Janove PLLC and Valter Malkhasyan of Malk & Pogo Law Group, LLP as members of the Executive Committee.

Respectfully submitted,

DATED: July 10, 2026

**KAPLAN FOX & KILSHEIMER LLP**

By:     /s/ *Laurence D. King*
            Laurence D. King

Laurence D. King
800 Third Avenue, 38th Floor
New York, NY  10022
Telephone: (212) 687-1980

1999 Harrison Street, Suite 1501
Oakland, CA  94612
Telephone: (415) 772-4700
Email: *lking@kaplanfox.com*

*Proposed Interim Co-Lead Counsel and Counsel for Plaintiff Michael Walsh and the Proposed Class*

**YAGMAN PLLC**
Blake Hunter Yagman
RXR PLAZA
626 RexCorp Plaza
Uniondale, NY  11556
Telephone: (929) 709-1493
Email: *blake.yagman@yagmanpllc.com*

*Proposed Interim Co-Lead Counsel and Counsel for Plaintiffs John Leam, Greg Drayton, Shannon Mahoney, Samantha Mettler, Francesca Mignosi and the Proposed Class*

**REESE LLP**
Michael Robert Reese
100 W. 93rd Street, 16th Floor
New York, NY  10025
Telephone: (212) 594-5300

*Proposed Interim Co-Lead Counsel and Counsel for Plaintiffs John Leam, Greg Drayton, Shannon Mahoney, Samantha Mettler, Francesca Mignosi and the Proposed Class*

**JANOVE PLLC**
Raphael Janove
115 Broadway, 5th Fl.
New York, New York 10006
Telephone: (646) 347-3940
Email: *raphael@janove.law*

*Proposed Executive Committee Member and
Counsel for Plaintiffs John Leam, Greg Drayton,
Shannon Mahoney, Samantha Mettler,
Francesca Mignosi and the Proposed Class*

**MALK & POGO LAW GROUP, LLP**
Valter Malkhasyan
5320 Laurel Canyon Blvd.
Valley Village, California 91607
Telephone: (818) 484-5204
Email*: valter@malkpogolaw.com*

*Proposed Executive Committee Member and
Counsel for Plaintiffs John Leam, Greg Drayton,
Shannon Mahoney, Samantha Mettler,
Francesca Mignosi and the Proposed Class*

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1

Pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the foregoing AMENDED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CONSOLIDATE CASES AND APPOINT INTERIM CO-LEAD CLASS COUNSEL complies with the applicable word-count limitations.

According to the word count feature of the word-processing program Microsoft Word used to prepare this document, the total number of words contained in this Memorandum of Law—excluding the parts exempted by Local Civil Rule 7.1(c)—is 6,705 words.

Respectfully submitted,

Dated:  July 10, 2026                    **KAPLAN FOX & KILSHEIMER LLP**

By:  /s/ *Laurence D. King*
          Laurence D. King

*Proposed Interim Co-Lead Counsel and Counsel for Plaintiff Michael Walsh and the Proposed Class*


## CERTIFICATE OF SERVICE

I, Laurence D. King, here certify that on this 10th day of July 2026, a true and correct copy of the above was filed with the Clerk of Court via the Court's CM/ECF system.

Respectfully submitted,

Dated:  July 10, 2026                    **KAPLAN FOX & KILSHEIMER LLP**

By:  /s/ *Laurence D. King*
          Laurence D. King

*Proposed Interim Co-Lead Counsel and Counsel for Plaintiff Michael Walsh and the Proposed Class*

- 25 -