UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | |
|---|---|
| *In re Gatorade Marketing & Sales Practices Litigation* | Case No. 7:26-cv-04258-JGLC-JCM<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS PEPSICO, INC., THE GATORADE COMPANY, AND STOKELY-VAN CAMP, INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS


PAGE

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. "No Artificial" Representations ..... 3

1. Factual Background ..... 3

2. Flavoring Regulations ..... 4

B. The Hydration Representation ..... 5

C. The Consolidated Class Action Complaint ..... 6

III. LEGAL STANDARD ..... 7

IV. ARGUMENT ..... 7

A. The "No Artificial" Representations Theory of Deception Fails ..... 7

1. Plaintiffs Have Not Plausibly Alleged the Citric Acid or Sodium Citrate in the Products are functioning as Artificial Flavors. ..... 7

a. Plaintiffs have not plausibly alleged citric acid and sodium citrate are flavors in the Products ..... 7

b. Plaintiffs have not plausibly alleged that either citric acid or sodium citrate is artificial ..... 11

2. No Reasonable Consumer is Misled by the No Artificial Representations. ..... 13

3. Plaintiffs' Claims are Preempted. ..... 18

B. The Hydration Theory of Deception Fails. ..... 19

1. Plaintiffs Have Not Plausibly Alleged the Hydration Representation is False. ..... 19

2. No Reasonable Consumer is Misled by the Hydration Representation ..... 22

C. Failure to Sufficiently Plead Their Statutory Claims Necessarily Compels Dismissal of the Complaint's Remaining Claims. ..... 25

D. Plaintiffs' Remaining Claims Independently Fail ..... 26

1. Express Warranty. ..... 26

2. Fraud. ..... 30

**TABLE OF CONTENTS (continued)**

**PAGE**

3. Unjust Enrichment. .......... 33

V. CONCLUSION .......... 35

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Aguilar v. Ocwen Fin. Corp.*,
No. CV 14-7675-MWF(SSX), 2015 WL 12659913 (C.D. Cal. Jan. 27, 2015)......................33

*Alamilla v. Hain Celestial Grp., Inc.*,
30 F. Supp. 3d 943 (N.D. Cal. 2014)........................................................................20

*Alce v. Wise Foods, Inc.*,
No. 17 CIV. 2402 (NRB), 2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018)......................18, 19

*Almazan v. Almazan*,
No. 14-CV-311 AJN, 2015 WL 500176 (S.D.N.Y. Feb. 4, 2015)......................................32

*Am. Fed'n of State Cnty. & Mun. Emps. v. Ortho–McNeil–Janssen Pharm., Inc.*,
No. 08–CV-5904, 2010 WL 891150 (E.D. Pa. Mar. 11, 2010)..........................................30

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011)........................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................8, 11, 31

*Axon v. Citrus World, Inc.*,
354 F. Supp. 3d 170 (E.D.N.Y. 2018),..........................................................................15

*Barreto v. Westbrae Natutral, Inc.*,
518 F. Supp. 3d 795 (S.D.N.Y. 2021)......................................................................25, 26

*Basmadjian v. Realreal, Inc.*,
No. C 17-06910 WHA, 2018 WL 2761857 (N.D. Cal. June 8, 2018)..............................28, 30

*Bassaw v. United Indus. Corp.*,
482 F. Supp. 3d 80 (S.D.N.Y. 2020)............................................................................27

*Bautista v. CytoSport, Inc.*,
223 F. Supp. 3d 182 (S.D.N.Y. 2016)..............................................................................7

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019)...............................................................................23, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................7, 11

**TABLE OF AUTHORITIES (continued)**

**PAGE(S)**

*Bell v. Publix Super Mkts. Inc.*,
982 F.3d 468 (7th Cir. 2020) ....................22, 23

*Bermudez v. Colgate-Palmolive Co.*,
No. 1:21-CV-10988 (JLR), 2023 WL 2751044 (S.D.N.Y. Mar. 31, 2023)....................22

*Bourbia v. S.C. Johnson & Son, Inc.*,
375 F. Supp. 3d 454 (S.D.N.Y. 2019)....................33, 34

*Bridgestone/Firestone, Inc. v. Carr's Tire Serv., Inc.*,
Civ. A. No. 90–7106, 1992 WL 365512 (E.D. Pa. Nov. 30, 1992)....................34

*Chiappetta v. Kellogg Sales Co.*,
No. 21-CV-3545, 2022 WL 602505 (N.D. Ill. Mar. 1, 2022)....................28

*Colella v. Atkins Nutritionals, Inc.*,
348 F. Supp. 3d 120 (E.D.N.Y. 2018) ....................18, 19

*Cooper v. Anheuser-Busch, LLC*,
553 F. Supp. 3d 83 (S.D.N.Y. 2021)....................27

*Cooper v. Broadspire Servs., Inc.*,
No. Civ. A. 04–5289, 2005 WL 1712390 (E.D. Pa. July 20, 2005)....................31

*Cosgrove v. Blue Diamond Growers*,
No. 19 CIV. 8993 (VM), 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) ....................25

*Crockett v. Luitpold Pharm., Inc.*,
No. CV 19-276, 2020 WL 433367 (E.D. Pa. Jan. 28, 2020) ....................27

*Crown Cell Inc. v. Ecovacs Robotics, Inc.*,
641 F. Supp. 3d 843 (N.D. Cal. 2022) ....................27

*Curley v. AMR Corp.*,
153 F.3d 5 (2d Cir. 1998)....................26

*Dashnau v. Unilever Mfg. (US), Inc.*,
529 F. Supp. 3d 235 (S.D.N.Y. 2021)....................32

*Davis v. Ricola USA, Inc.*,
No. 22-CV-3071, 2022 WL 4131588 (C.D. Ill. Sept. 12, 2022) ....................29, 32

*Durell v. Sharp HealthCare*,
183 Cal. App. 4th 1350 (2010) ....................33

## TABLE OF AUTHORITIES (continued)

**PAGE(S)**

*Dvora v. Gen. Mills, Inc.*,
No. CV 11-1074-GW PLAX, 2011 WL 1897349 (C.D. Cal. May 16, 2011) .......................... 19

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) .......................................................................................... 17

*Eckler v. Wal-Mart Stores, Inc.*,
No. 12-cv-00727 (LAB) (MDD), 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ...................... 10

*Elias v. Hewlett-Packard Co.*,
903 F. Supp. 2d 843 (N.D. Cal. 2012) ............................................................................. 31

*Fermin v. Pfizer Inc.*,
215 F. Supp. 3d 209 (E.D.N.Y. 2016) ............................................................................. 14

*Fish Net, Inc. v. ProfitCenter Software, Inc.*,
No. CIV.A. 09-5466, 2011 WL 1235204 (E.D. Pa. Mar. 31, 2011) ..................................... 34

*Fitzpatrick v. Fitzpatrick*,
No. 2:12-CV-2938 GEB AC, 2013 WL 4678879 (E.D. Cal. Aug. 30, 2013) ......................... 30

*Fogelson v. Snapple Beverage Corp.*,
No. 25-CV-33 (RER) (TAM), 2026 WL 2149968 (E.D.N.Y. Mar. 27, 2026) ............ 11, 12, 13

*Foster v. Whole Foods Mkt. Grp., Inc.*,
No. 23-285-cv, 2023 WL 8520270 (2d Cir. Dec. 8, 2023) .................................................. 22

*Freeman v. MAM USA Corp.*,
528 F. Supp. 3d 849 (N.D. Ill. 2021) ............................................................................... 17

*Grossman v. Simply Nourish Pet Food Co.*,
516 F. Supp. 3d 261 (E.D.N.Y. 2021) ........................................................................ 27, 29

*Harvey v. WK Kellogg Co.*,
No. 2:25-CV-3984, 2025 WL 3706665 (E.D.N.Y. Dec. 22, 2025) ....................................... 30

*Hawkins v. Coca-Cola Co.*,
654 F. Supp. 3d 290 (S.D.N.Y. 2023) ............................................................................... 13

*Horti v. Nestle HealthCare Nutrition, Inc.*,
No. 21-CV-09812-PJH, 2022 WL 2441560 (N.D. Cal. July 5, 2022) .................................... 25

*Housey v. Procter & Gamble Co.*,
No. 21 Civ. 2286 (NRB), 2022 WL 874731 (S.D.N.Y. Mar. 24, 2022) ................................. 10

## TABLE OF AUTHORITIES (continued)

PAGE(S)

*Howze v. Mondelez Glob. LLC*,
No. 22-CV-351 (JLS), 2023 WL 122307 (W.D.N.Y. Jan. 5, 2023)....33

*Hu v. Herr Foods, Inc.*,
251 F. Supp. 3d 813 (E.D. Pa. 2017)....9

*Hughes v. Ester C Co.*,
930 F. Supp. 2d 439 (E.D.N.Y.2013)....21

*In re Coudert Bros.*,
673 F.3d 180 (2d Cir. 2012)....26

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
No. 12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)....17, 26, 30

*In re Grand Theft Auto Video Game Consumer Litig.*,
251 F.R.D. 139 (S.D.N.Y. 2008)....26

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*,
588 F. Supp. 2d 527 (S.D.N.Y. 2008)....18, 19

*In re Plum Baby Food Litig.*,
No. 4:21-CV-00913-YGR, 2024 WL 1354447 (N.D. Cal. Mar. 28, 2024)....25

*Ivie v. Kraft Foods Global, Inc.*,
961 F. Supp. 2d 1033 (N.D. Cal. 2013)....8, 9, 19

*Jackson v. SFC Glob. Supply Chain, Inc.*,
No. 3:20-CV-1072-DWD, 2021 WL 3772696 (S.D. Ill. Aug. 25, 2021)....15

*Jessani v. Monini N. Am., Inc.*,
744 F. App’x 18 (2d Cir. 2018)....14

*Kacsuta v. Lenovo (United States) Inc.*,
No. SACV 13-00316-CJC, 2013 WL 12126775 (C.D. Cal. July 16, 2013)....28

*Karabas v. TC Heartland LLC*,
770 F. Supp. 3d 454 (E.D.N.Y. 2025....15, 16

*Kardovich v. Pfizer, Inc.*,
97 F. Supp. 3d 131 (E.D.N.Y. 2015)....10, 20, 21

*Kelly v. Cape Cod Potato Chip Co.*,
81 F. Supp. 3d 754 (W.D. Mo. 2015)....16

**TABLE OF AUTHORITIES (continued)**

**PAGE(S)**

*Kennard v. Kellogg Sales Co.*,
No. 21-CV-07211-WHO, 2022 WL 4241659 (N.D. Cal. Sept. 14, 2022) ........................23, 24

*Kerr v. State Farm Mut. Auto. Ins. Co.*,
No. CV 18-309, 2018 WL 5809989 (W.D. Pa. Nov. 6, 2018) ..............................................18

*Kinman v. Kroger Co.*,
604 F. Supp. 3d 720 (N.D. Ill. 2022) ....................................................................................31

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) ..............................................................................................20

*Levine v. Blue Shield of Cal.*,
189 Cal. App. 4th 1117 (2010) ............................................................................................33

*Lisowski v. Henry Thayer Co. Inc.*,
501 F. Supp. 3d 316 (W.D. Pa. 2020)...................................................................................25

*Milan v. Wertheimer*,
808 F.3d 961 (2d Cir. 2015)....................................................................................................9

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ........................................................................................22, 23, 24

*Myers v. Wakefern Food Corp.*,
No. 20 Civ. 8470 (NSR), 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ..................................12

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*,
962 F. Supp. 2d 514 (S.D.N.Y. 2013)....................................................................................17

*Newman v. Metro. Life Ins. Co.*,
885 F.3d 992 (7th Cir. 2018) ..............................................................................................22

*Niles v. Beverage Mktg. USA, Inc.*,
No. 19-CV-1902 (SJF)(ARL), 2020 WL 4587753 (E.D.N.Y. Apr. 16, 2020).......................29

*Parks v. Ainsworth Pet Nutrition, LLC*,
377 F. Supp. 3d 241 (S.D.N.Y. 2019)....................................................................................15

*Pelayo v. Nestle USA, Inc.*,
989 F. Supp. 2d 973 (C.D. Cal. 2013) ..................................................................................16

*Peters v. Keurig Dr Pepper Inc.*,
No. 25-CV-4410 (MKB), 2026 WL 2622455 (E.D.N.Y. Sept. 4, 2026)........................ passim

**TABLE OF AUTHORITIES (continued)**

**PAGE(S)**

*Podpeskar v. Dannon Co., Inc.*,
No. 16-CV-8478 (KBF), 2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017)....................................17

*Price v. L'Oreal USA, Inc.*,
No. 17 CIV. 0614(LGS), 2017 WL 4480887 (S.D.N.Y. Oct. 5, 2017)....................................26

*Quiroz v. Beaverton Foods, Inc.*,
No. 17-cv-07348 (NGG), 2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019)................................32

*Robinson v. HSBC Bank USA*,
732 F. Supp. 2d 976 (N.D. Cal. 2010)....................................................................................33

*Rudy v. D.F. Stauffer Biscuit Co.*,
666 F. Supp. 3d 706 (N.D. Ill. 2023)................................................................................27, 31

*Rudy v. Family Dollar Stores*,
583 F. Supp. 3d 1149 (N.D. Ill. 2022)....................................................................................28

*Samiento v. World Yacht Inc.*,
10 N.Y.3d 70 (2008)...............................................................................................................34

*Samuels v. Hendricks*,
445 A.2d 1273 (Pa. Super. Ct. 1982)......................................................................................34

*Santiful v. Wegmans Food Mkts., Inc.*,
No. 20-CV-2933 (NSR), 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022)....................................13

*Sarr v. BEF Foods, Inc.*,
No. 18-CV-6409 (ARR) (RLM), 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020)................14, 32

*Schmidt v. Ford Motor Co.*,
972 F. Supp. 2d 712 (E.D. Pa.2013)...................................................................................29, 34

*Seljak v. Pervine Foods, LLC*,
No. 21 CIV. 9561 (NRB), 2023 WL 2354976 (S.D.N.Y. Mar. 3, 2023)................................18

*Sepanossian v. Nat'l Ready Mix Concrete Co.*,
97 Cal. App. 5th 192 (2023)...................................................................................................34

*Sevin v. Kelshaw*,
611 A.2d 1232 (Pa. Super. Ct. 1992)......................................................................................31

*Silvester v. Selene Fin., LP*,
No. 18-CV-02425 (PMH), 2021 WL 861080 (S.D.N.Y. Mar. 8, 2021)..................................30

## TABLE OF AUTHORITIES (continued)

**PAGE(S)**

*Singleton v. Fifth Generation, Inc.*,
No. 5:15-CV-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ....29

*Sitt v. Nature's Bounty, Inc.*,
No. 15-CV-4199, 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ....33

*Solak v. Hain Celestial Grp., Inc.*,
No. 317CV0704LEKDEP, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) ....26

*Spector v. Mondelez Int'l, Inc.*,
178 F. Supp. 3d 657 (N.D. Ill. Mar. 31, 2016) ....25

*Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
171 F.3d 912 (3d Cir. 1999)....25

*Strugala v. Flagstar Bank, FSB*,
839 F. App'x 69 (9th Cir. 2020) ....31

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ....30

*Tomasino v. Estee Lauder Cos.*,
44 F. Supp. 3d 251 (E.D.N.Y. 2014) ....27

*Troutt v. Mondelez Glob. LLC*,
637 F. Supp. 3d 606 (S.D. Ill. 2022)....32

*Trujillo v. Apple Comput., Inc.*,
581 F. Supp. 2d 935 (N.D. Ill. 2008) ....34

*Turnipseed v. Simply Orange Juice Co.*,
No. 20 Civ. 8677 (NSR), 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ....13

*Twohig v. Shop-Rite Supermkts., Inc.*,
519 F. Supp. 3d 154 (S.D.N.Y. 2021)....31

*Tyman v. Pfizer, Inc.*,
16 Civ. 6941 (LTS) (BCM), 2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017) ....27

*Valencia v. Snapple Beverage Corp.*,
No. 23-CV-1399 (CS), 22024....13, 14, 15, 16

*ValveTech v. Aerojet Rocketdyne, Inc.*,
2018 WL 4681799 (W.D.N.Y. Sept. 28, 2018) ....33

## TABLE OF AUTHORITIES (continued)

**PAGE(S)**

*Van Orden v. Hikari Sales U.S.A., Inc.*,
No. 1:22-CV-504-MAD-DJS, 2023 WL 5336813 (N.D.N.Y. Aug. 18, 2023) ....................14

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019) ....................25

*Viggiano v. Hansen Nat. Corp.*,
944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................8, 10

*Wynn v. Topco Assocs., LLC*,
2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ....................15, 25, 31

*Zuchowski v. SFC Glob. Supply Chain, Inc.*,
No. 20-CV-10171 (ALC), 2022 WL 3586716 (S.D.N.Y. Aug. 22, 2022) ....................9

**REGULATIONS**

21 C.F.R. § 100.1 ....................19

21 C.F.R. § 101.22 .................... passim

21 C.F.R. § 170.3 ....................5, 11

21 C.F.R. § 184.1033 ....................3

21 C.F.R. § 184.1751 ....................3

# I. INTRODUCTION

Gatorade is a popular sports beverage that helps replenish electrolytes and carbohydrates. Gatorade products come in multiple forms, varieties, and flavors. Ingredients vary by product, but some varieties contain citric acid and sodium citrate, along with natural flavors. The products' labels include truthful statements including "Naturally Flavored," "No Artificial Flavors," and "Hydrates Better Than Water," reflecting the products' natural flavoring ingredients and hydration benefits. Plaintiffs, Gatorade consumers from four different states, challenge these statements under two distinct theories. First, they allege that the products contain artificial flavors—citric acid and sodium citrate—despite their natural-flavor representations. Second, they allege that "Hydrates Better Than Water" is misleading because the products provide that benefit only under certain conditions. Both theories are contrived and rest largely on unsupported assumptions rather than well-pleaded facts. Neither theory plausibly alleges a false or misleading representation. All claims resting on those theories should therefore be dismissed.

*First*, Plaintiffs fail to plausibly allege that the products contain artificial flavors. This theory rests on two unsupported premises: that the citric acid and sodium citrate in the products are artificial and that those ingredients function as flavors. As to the first premise, Plaintiffs offer no independent, product-specific testing establishing that either ingredient is artificial. Instead, they rely on general industry practices to speculate about how the ingredients in these particular products were manufactured, an approach several courts in this district have recently rejected. As to the second premise, Plaintiffs have not plausibly alleged that citric acid and sodium citrate function as flavors in the products. They rely on the mere possibility that these ingredients can serve that function. But allegations about their potential uses alone do not plausibly support the inference that they function as flavors in the products, where they appear in combination with other ingredients.

Even accepting those premises, Plaintiffs' artificial flavor theory fails under the reasonable consumer standard, as multiple recent decisions confirm. Just last month, a federal court dismissed a nearly identical claim, explaining that "[a] reasonable consumer would not think that a compound

found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic." *Peters v. Keurig Dr Pepper Inc.*, No. 25-CV-4410 (MKB), 2026 WL 2622455, at *16 (E.D.N.Y. Sept. 4, 2026).

And to the extent Plaintiffs' flavor-labeling theory would impose obligations inconsistent with federal flavoring regulations, it is also preempted. FDA regulations require manufacturers to identify a food's "characterizing flavor" and prescribe how that flavor must be described. Congress mandated nationwide uniformity by expressly preempting labeling requirements that are "not identical" to the applicable federal requirements. 21 U.S.C. § 343-1(a)(2). Plaintiffs cannot impose liability for flavor-labeling statements that those regulations require.

*Second*, Plaintiffs fail to plausibly allege that the statement "Hydrates Better Than Water" is misleading. Plaintiffs do not contend that Gatorade never hydrates better than water. Rather, they assert that it does so only when the consumer is sweating. Yet the sources they cite do not plausibly establish that limitation. Plaintiffs rely primarily on a blog post and a Health.com article that acknowledge Gatorade's hydration benefits, including those attributable to its electrolytes and carbohydrates. Those sources offer vague critiques of Gatorade, but do not remotely show that Gatorade somehow lacks hydration benefits that differentiate it from water. Additionally, even accepting Plaintiffs' asserted limitation as true, their theory disregards the context in which reasonable consumers encounter the statement: on a sports drink marketed for athletic activity.

For these reasons and those that follow, the Consolidated Class Action Complaint should be dismissed in its entirety with prejudice.

## II. BACKGROUND

Defendants The Gatorade Company, and Stokely-Van Camp, Inc. (together with their parent company, Defendant PepsiCo, Inc., collectively, "PepsiCo") manufacture and distribute Gatorade-brand beverages and drink mixes, including Gatorade Lower Sugar Electrolyte Sports Drink ("Lower Sugar Gatorade"), Gatorade Zero Powder Sticks ("Gatorade Powder"), Gatorade Thirst Quencher ("Classic Gatorade"), and Gatorade Zero Sugar Thirst Quencher ("Gatorade

Zero") (collectively, the "Products"). Consolidated Class Action Complaint ("CCAC") ¶ 1. The eight named Plaintiffs are New York, California, Illinois, and Pennsylvania consumers who allege that they purchased one or more of the varieties of the Products in their respective states. *Id.* ¶¶ 18–19, 24, 29–30, 35–36, 41–42, 48–49, 54–55, 60–62. Plaintiffs advance two distinct theories of deception: one challenging the Products' representations concerning artificial flavors, and the other challenging the separate claim that the Products "Hydrate[] Better Than Water." *Id.* ¶¶ 2–12.

**A. "No Artificial" Representations**

**1. Factual Background**

Lower Sugar Gatorade and Gatorade Powder bear various combinations of the following statements: "No Artificial Flavors, Sweeteners, or Added Colors," "No Artificial Flavors, Sweeteners, or Colors from Artificial Sources," "No Added Colors or Artificial Flavors," "Naturally Flavored," and "Naturally Flavored with Other Natural Flavors" (collectively, the "No Artificial Representations"). *Id.* ¶¶ 1, 3, 70(a), 81–83, 85; *see also* Declaration of Charles Sipos ("Sipos Decl.") ¶ 2, Ex. A (Lower Sugar Gatorade Product Label); ¶ 3, Ex. B (Gatorade Powder Label). These statements reflect that the Products contain flavors derived from natural sources and therefore qualify as naturally flavored under federal regulations. *See* 21 C.F.R. § 101.22. The Products' ingredient lists disclose both citric acid and sodium citrate. *See* CCAC ¶¶ 118, 120; Sipos Decl. ¶ 2, Ex. A (Lower Sugar Gatorade Product Label), ¶ 3, Ex. B (Gatorade Powder Label). They further disclose that "natural flavors" are ingredients of the Products. *Id.*

Plaintiffs acknowledge that citric acid "occurs naturally." CCAC ¶ 94. FDA regulations likewise describe citric acid as "a naturally occurring constituent of plant and animal tissues" and state that it "may be produced by recovery from sources such as lemon or pineapple juice." *See* 21 C.F.R. § 184.1033(a). FDA regulations define sodium citrate as "the sodium salt of citric acid." 21 C.F.R. § 184.1751.

The FDA lists several functions of citric acid, including as a "flavor enhancer," "flavoring agent or adjuvant," and "pH control agent," among other uses.[1] Sipos Decl. ¶ 6, Ex. E. The FDA also lists several functions of sodium citrate, including as a "color or coloring adjunct," "emulsifier or emulsifier salt," "flavoring agent or adjuvant," "nutrient supplement," and "pH control agent."[2] Sipos Decl.¶ 7, Ex. F. Plaintiffs openly admit that both ingredients have multiple functions. CCAC ¶¶ 115, 117.

Plaintiffs nevertheless stack assumption upon assumption: that the Products contain "artificial" citric acid and sodium citrate, that those ingredients function as flavors, and that the No Artificial Representations are therefore false and misleading. CCAC ¶ 4.

### 2. Flavoring Regulations

The FDA has issued a regulation, 21 C.F.R. § 101.22, that governs the use and labeling of flavoring agents in foods and beverages. According to this regulation, a product's "characterizing flavor" is the primary flavor explicitly or implicitly represented on the product's label, packaging, or advertising. 21 C.F.R. § 101.22(i). It specifies that if the characterizing flavor comes from "natural flavor" derived from the characterizing food ingredient, the manufacturer must state that the product is naturally flavored. 21 C.F.R. § 101.22(i)(1)(i). It further clarifies that this requirement applies only "[i]f the food is one that is commonly expected to contain a characterizing food ingredient." *Id.* For example, a strawberry yogurt product should be labeled "strawberry flavored" or "natural strawberry flavored" if the strawberry flavor is derived from real strawberries, assuming strawberries are commonly expected in the product. *Id.* If the product contains both a characterizing flavor derived from the characterizing ingredient and "other natural flavor which simulates, resembles or reinforces the characterizing flavor," the regulation directs the manufacturer to add the phrase "with other natural flavors" to the label. *Id.* § 101.22(i)(1)(iii). For example, a strawberry flavored yogurt should be labeled "Naturally Flavored with Other

---

[1] *See* https://hfpappexternal.fda.gov/scripts/fdcc/index.cfm?set=FoodSubstances&id=CITRICACID (last visited October 29, 2026).
[2] See https://hfpappexternal.fda.gov/scripts/fdcc/index.cfm?set=FoodSubstances&id=TRISODIUMCITRATE (last visited October 29, 2026).

Natural Flavors" if some natural flavor comes from real strawberries but there are additional natural flavors (from other natural sources) added to enhance the strawberry taste. But if the food "contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor," the regulation directs the manufacturer to describe the product as "artificially flavored." *Id.* § 101.22(i)(2).

These regulations apply only to "flavoring agents and adjuvants," which are "[s]ubstances added to impart or help impart a taste or aroma in food." 21 C.F.R. § 170.3(o)(12). The regulations do not apply to "flavor enhancers," which are "[s]ubstances added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." *Id.* § 170.3(o)(11). Because "flavor enhancers are not flavorings," the FDA has made clear that they need not be disclosed on the front label but instead "must be declared in the ingredient list by their common or usual names." FDA, Food Labeling: Declaration of Ingredients, 56 Fed. Reg. 28592, 28598 (June 21, 1991) (noting that the "FDA's regulations describing the various functional effects of human food ingredients differentiate between 'flavoring agents and adjuvants' and 'flavor enhancers'").

**B. The Hydration Representation**

All Products—which Plaintiffs describe as "sports hydration drinks"—bear the label claim "Hydrates Better Than Water" (the "Hydration Representation"), along with an image of an athlete drinking the beverage. CCAC ¶ 72; *see also* Sipos Decl. ¶ 2, Ex. A (Lower Sugar Gatorade Product Label); ¶ 3, Ex. B (Gatorade Powder Label); ¶ 4, Ex. C (Classic Gatorade); ¶ 5, Ex. D (Gatorade Zero). The Products' labels identify the product as "electrolyte beverage[s]" or "thirst quencher powder[s]" and the ingredient deck lists various ingredients known to contribute to hydration. *Id.* For example, Classic Gatorade contains salt, sodium citrate, and monopotassium phosphate, which supply electrolytes, as well as sugar, which supplies carbohydrates. *Id.*, Ex. C (Classic Gatorade). The back label of the Products also displays the Gatorade Sports Science Institute logo. *Id.*

Although Plaintiffs challenge the Hydration Representation, they acknowledge that "Gatorade replaces the electrolytes, sodium, and carbohydrates that sweat removes." CCAC ¶ 130.

Instead, their theory centers around the fact that the Products allegedly do not provide those same benefits "[f]or a consumer who is not sweating." *Id.* ¶ 131. Specifically, they allege that the Hydration Representation is false and misleading for the overwhelming majority of consumers who drink the Products without exercising. *Id.* ¶¶ 130, 133, 143. In the CCAC, each named Plaintiff alleges a specific desire "to purchase *sports* hydration drinks." *Id.* ¶¶ 23, 28, 34, 40, 47, 53, 59, 65. Moreover, Plaintiffs affirmatively allege that the Products are "targeted at 'active consumers'" and include images of advertisements featuring baseball players, basketball players and other athletes. *Id.* ¶¶ 81, 85–86, 90.

Plaintiffs nevertheless assume that the Products provide no comparative hydration benefit to consumers who are not sweating and, on that premise, characterize the Hydration Representation as false and misleading despite the sports-hydration context their own allegations describe.

### C. The Consolidated Class Action Complaint

Based on the two theories described above, Plaintiffs assert claims under New York's General Business Law ("GBL"), §§ 349 and 350; the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*.; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.; the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq.; and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq*. *Id.* ¶¶ 165–219. Plaintiffs also assert claims for breach of express warranty, unjust enrichment (in the alternative), and fraud. *Id.* ¶¶ 220–247.

Plaintiffs seek to represent two nationwide classes: a "No Artificial" class and a "Hydration" class. *Id.* ¶ 151. Alternatively, Plaintiffs seek to represent California, New York, Illinois, and Pennsylvania subclasses, corresponding to their respective states. *Id.* ¶ 152. Plaintiffs request an "award of actual, compensatory, and statutory damages" and "all other forms of equitable monetary relief." *Id.* at 66–67 (Prayer for Relief). They also seek "punitive and exemplary damages, statutory penalties, and monetary fines," as well as "attorneys' fees, expenses, and costs." *Id.*

## III. LEGAL STANDARD

It is a plaintiff's burden to demonstrate their entitlement to relief, and that obligation "requires more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In evaluating the sufficiency of a complaint, the Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 187–88 (S.D.N.Y. 2016) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 188 (quoting *Iqbal,* 556 U.S. at 679). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (citation modified) (quoting *Iqbal*, 556 U.S. at 679).

## IV. ARGUMENT

### A. The "No Artificial" Representations Theory of Deception Fails.

#### 1. Plaintiffs Have Not Plausibly Alleged the Citric Acid or Sodium Citrate in the Products are functioning as Artificial Flavors.

Plaintiffs' theory of deception is entirely premised on the idea that citric acid and sodium citrate are both undisclosed artificial flavors in the Products. Accordingly, they must plausibly allege that the citric acid and sodium citrate function as flavors *and* are artificial. Plaintiffs have failed to do so.

##### a. Plaintiffs have not plausibly alleged citric acid and sodium citrate are flavors in the Products.

Plaintiffs' unsupported assertion that both citric acid and sodium citrate function as "artificial flavors" in the Products is insufficient to survive a motion to dismiss. To establish these ingredients function as flavors, Plaintiffs must plausibly allege that they "simulate[], resemble[][,] or reinforce[] the characterizing flavor" of the Products, which in this case ranges from orange to grape. 21 C.F.R. § 101.22(i)(1); *see also id.* § 101.22(i) (noting that the "primary recognizable

flavor" of a product, as depicted through words or vignettes, is its "characterizing flavor"). The term "flavor" is a specific and limited term under federal regulations, which draw a distinction between a "flavoring"—the purpose of which is to impart a distinctive flavor of its own—and a "flavor enhancer"—an ingredient that has no distinctive flavor of its own, but that intensifies the flavors from other ingredients. *See* 21 C.F.R. § 101.22(a)(1).

The FDA recognizes multiple functions for citric acid and sodium citrate, including pH control and flavor enhancer. *See supra* at II.A.(1). And Plaintiffs likewise acknowledge that both ingredients have multiple functions. CCAC ¶¶ 115, 117. To satisfy the *Iqbal* standard, Plaintiffs must allege some plausible factual basis for the contention that both citric acid and sodium citrate are used in all of these Products as flavors, rather than serving another function, such as pH control or flavor enhancer.

Courts have dismissed similar lawsuits absent plausible allegations that the challenged ingredient served the function the plaintiff claimed it did. For example, in *Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033 (N.D. Cal. 2013), the court dismissed a lawsuit alleging that the defendant misrepresented its products as containing "natural flavors" when they contained sodium citrate and potassium citrate, which the plaintiff characterized as "artificial flavors." *Id.* at 1041–42. "While these substances may be artificial ingredients," the court reasoned, the plaintiffs' allegations did not establish that "these ingredients are flavors, artificial or otherwise." *Id.* at 1041. In so holding, the court emphasized that a "bare, conclusory assertion that these two ingredients 'simulate[], resemble[], or reinforce[] the characterizing [lemon] flavor' . . . is insufficient to state a claim that these labels violate 21 C.F.R. § 101.22(i)(2)." *Id.* at 1042 (alteration in original). In other words, it is not enough for Plaintiffs to allege that citric acid or sodium citrate may incidentally affect the Products' taste or "amplify whatever characterizing flavor it has from another source." *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013). Rather, to establish that they act as an "artificial flavor," Plaintiffs must plausibly allege that it "give[s] the product an original taste." *Id.* Plaintiffs have not done so.

Similarly, in *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017), the plaintiff alleged that the statement "No Preservatives Added" was false because the products contained citric acid, which the plaintiff characterized as a preservative. *Id.* at 816–17. The court dismissed the lawsuit, holding that the plaintiff had not plausibly alleged that citric acid acted as a preservative in the product. *See id.* at 821–22. The court rejected the plaintiff's argument that reasonable consumers would still view citric acid as a preservative "regardless of its functionality—i.e., even if [it] does not actually preserve that particular product." *Id.* at 821. Allegations that an ingredient serves a function in some other foods generally, without a basis that it serves that function in the specific food in question, are "arguments and speculations . . . not supported by well-pleaded factual allegations" that a court "need not accept as true." *Id.* at 822–23; *see also Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (stating that courts "need not accept conclusory allegations or legal conclusions couched as factual . . . allegations" (citations and quotation marks omitted)).

*Zuchowski* is also instructive. *See Zuchowski v. SFC Glob. Supply Chain, Inc.*, No. 20-CV-10171 (ALC), 2022 WL 3586716, at *3 (S.D.N.Y. Aug. 22, 2022) (dismissing GBL claims because the plaintiff did not plausibly allege that the challenged ingredients were functioning as preservatives in the challenged product). There, the plaintiff alleged that the label statement "PRESERVATIVE FREE CRUST" was misleading because the product contained ingredients that the plaintiff claimed were preservatives. *Id.* The court dismissed the claims, finding that the plaintiff failed to adequately plead a materially misleading representation. *Id.* While the complaint alleged that the challenged ingredients functioned as anti-staling agents in bread and baked goods, the plaintiff did not "explain how these ingredients operate as preservatives in Defendant's product, frozen pizzas, as opposed to breads and baked goods." *Id.* Accordingly, the plaintiff did not sufficiently allege the presence of preservatives in the challenged food, so the "PRESERVATIVE FREE CRUST" deception claim failed. *Id.*

Here, as in *Ivie*, *Hu*, and *Zuchowski*, Plaintiffs have not plausibly alleged that either citric acid or sodium citrate in the Products acts as flavors, as opposed to a flavor enhancer or another

function. Throughout the CCAC, Plaintiffs make non-supported conclusory allegations that the citric acid and sodium citrate "impart[s] flavor" to the Products. CCAC ¶¶ 121, 170, 238. Even at the pleading stage, more is required. *See Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 140 (E.D.N.Y. 2015) ("[U]nsupported statements do nothing to support the plausibility of plaintiffs' claim . . . .").

In an attempt to support their claim that citric acid's purported function in the Products is as a flavor, Plaintiffs rely on the assertion that citric acid "inherently imparts acidity" and therefore must affect the flavor of the Product. CCAC ¶ 122. But incidentally affecting the taste of a beverage does not mean an ingredient functions a flavor. *See Viggiano*, 944 F. Supp. 2d at 889. Indeed, it is not enough that an ingredient *may* collaterally affect the taste of the beverage or "amplify whatever characterizing flavor it has from another source." *Id.*

Plaintiffs also rely on a handful of studies and regulatory materials. The cited studies, however, do not provide a plausible basis to conclude that citric acid functions as a flavor in these specific Products, which already contain natural flavors. CCAC ¶¶ 115–116. Rather, they examine simplified experimental conditions involving selected ingredients in isolation or in limited combinations, such as "sucrose-citric acid mixtures," "lemon extract, sucrose, and citric acid, presented separately and together," and sucrose and citric acid "presented either separately on each side of the tongue simultaneously or in a mixture on one side." *See id.* ¶ 116 n.45. The production and regulatory materials are even further removed from any product-specific use: they address how citric acid is manufactured and the range of technical effects for which it may be used in foods generally. *See id.* ¶ 97 n.23; ¶ 111 n.38; ¶ 115 n.42; ¶ 116 n.44.

Accordingly, this scientific evidence does not actually support their claims that citric acid universally functions as a flavor in all the various flavors of the Products. *See Eckler v. Wal-Mart Stores, Inc.,* No. 12-cv-00727 (LAB) (MDD), 2012 WL 5382218, at *6–7 (S.D. Cal. Nov. 1, 2012) (dismissing claims because "the Court cannot accept that the studies [the plaintiff] cites lend 'facial plausibility' to her claims that the Equate representations are false or misleading" when "none of these studies actually involved Equate"); *see also Housey v. Procter & Gamble Co.*, No. 21 Civ.

2286 (NRB), 2022 WL 874731, at *5–6 (S.D.N.Y. Mar. 24, 2022) ("Where a plaintiff has chosen to use scientific evidence to state her claims, and that evidence does not support her claims, plaintiff has not plausibly pled her claims."), *aff'd*, No. 22-888, 2022 WL 17844403 (2d Cir. Dec. 22, 2022).

Plaintiffs offer even less support for their assumption that sodium citrate functions as a flavor in the Products. They merely cite to USDA source stating that sodium citrate is *usually* used as "flavoring or as a preservative" and one article stating that it is used as a flavor in club soda and "lemon-lime soft drinks," products unrelated to the Products at issue here. CCAC ¶ 117.

Even if Plaintiffs' allegations were sufficient to establish that citric acid and sodium citrate could act as a "flavor" in the Products (which they are not), the "mere possibility" that they function as a flavor is not enough to state a plausible claim. *Iqbal*, 556 U.S. at 679. Under the federal rules, a plaintiff has an obligation to establish the evidentiary basis for a claim before filing a complaint. Fed. R. Civ. P. 11(b)(3). Moreover, Fed. R. Civ. P. 8(a)(2) requires that a complaint show "the pleader is entitled to relief." To satisfy this requirement, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiffs may not rely merely on guesswork and wishful thinking about the functions citric acid and sodium citrate serve in the Products at issue. Absent any plausible allegation that both these ingredients provide a "characteristic taste or aroma of its own" to this broad range of flavored products and does not merely "enhance" or "modify" other flavors, 21 C.F.R. § 170.3(o)(11), this Court should dismiss Plaintiffs' lawsuit.

**b. Plaintiffs have not plausibly alleged that either citric acid or sodium citrate is artificial.**

Plaintiffs have not plausibly alleged that the Products contain "synthetic" citric acid or sodium citrate derived from synthetic citric acid. Where an ingredient can come from natural or synthetic sources, a plaintiff must "cross the line from conceivable to plausible by pleading 'factually substantiated allegations' that the challenged ingredient is, in fact, artificial." *Fogelson v. Snapple Beverage Corp.*, No. 25-CV-33 (RER) (TAM), 2026 WL 2149968, at *3 (E.D.N.Y.

Mar. 27, 2026). In their complaint, Plaintiffs openly admit that "citric acid" occurs naturally and that sodium citrate is a derivative of that citric acid. CCAC ¶¶ 94, 111. Nonetheless, Plaintiffs presume that the Products contain "artificial citric acid" produced from mold. CCAC ¶¶ 97–103. This assertion is nothing more than speculation. Plaintiffs have not tested the Products to confirm the presence of supposedly "synthetic" citric acid or sodium citrate derived from synthetic citric acid, nor do they allege any facts regarding the Products' manufacturing process, the source of the Products' citric acid or sodium citrate, or any other product-specific information that would provide a plausible basis to infer that either ingredient used here is synthetic.

Instead, Plaintiffs rely solely on the assumption that, because it is industry practice to use the "artificial" variety and "essentially all commercially available citric acid is manufactured," the Products must contain that version too. CCAC ¶¶ 97, 140. That assumption asks the Court to make an "impermissible inferential leap." *Fogelson*, 2026 WL 2149968, at *4. Instead, Plaintiffs must "draw a connection between common industry practice and the actual practice used by the [D]efendant"—a connection the complaint does not supply. *Peters*, 2026 WL 2622455, at *12. And "plaintiffs cannot cure this pleading deficiency by merely pointing to common macroeconomic or manufacturing trends—such as the widespread commercial use of cheaper, synthetic alternatives—without a direct 'connection between the common industry practice and the actual practice used by the defendant.'" *Fogelson*, 2026 WL 2149968, at *3 (quoting *Valencia v. Snapple Beverage Corp.*, No. 23-CV-1399 (CS), 22024 WL 1158476, at *5 (S.D.N.Y. Mar. 18, 2024)). Without that connection, Plaintiffs' allegations remain conjecture, not a plausible basis to infer that the Products contain synthetic citric acid or contain sodium citrate derived from synthetic citric acid.

Even taking the allegations as true for purposes of Rule 12, however, the complaint's allegations remain inadequate. *See Myers v. Wakefern Food Corp.*, No. 20 Civ. 8470 (NSR), 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (holding that plaintiff failed to sufficiently allege misrepresentation regarding artificial flavors because she referenced a laboratory test but provided no details about the test's methodology, timing, location, or the qualifications of those who

conducted it); *Turnipseed v. Simply Orange Juice Co.*, No. 20 Civ. 8677 (NSR), 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022) (same); *Santiful v. Wegmans Food Mkts., Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022) (explaining that because plaintiffs' claim that the Product contains artificial flavors relied solely on a lab analysis that lacked details about its methodology, timing, location, testers, and the specific product tested, it was insufficient to support their conclusory allegations).

For example, in *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290 (S.D.N.Y. 2023), the plaintiff alleged that Coca-Cola mislabeled a soda product with the phrase "100% Natural Flavors," despite containing malic acid, which the plaintiff alleged was an "artificial flavor[]." *Id.* at 295–98, 302. The court dismissed the lawsuit, holding that the plaintiff's "bare, unsubstantiated allegations about the possibility that the Product contains artificial DL-Malic acid, without any additional factual support from product testing," were not sufficient to establish that the soda contained "artificial" malic acid. *Id.* at 305; *see also Valencia*, 2024 WL 1158476, at *5 (dismissing case, finding "[p]laintiff's bare claim here that citric acid today is made from mold rather than citrus fruit cannot, absent any allegation specific to the Products and absent any basis for her assertion about all citric acid, be sufficient"). Here, just as in *Hawkins*, *Fogelson*, and *Peters*, Plaintiffs' allegations lack the product-specific factual support needed to plausibly allege that the Products contain synthetic citric acid or synthetic sodium citrate.

Accordingly, Plaintiffs have not plausibly alleged that either the citric acid or its derivative, sodium citrate, in the Products is synthetic.

### 2. No Reasonable Consumer is Misled by the No Artificial Representations.

*Assuming arguendo* that Plaintiffs' allegations were sufficient to demonstrate that the citric acid and sodium citrate in the Products were industrially produced, Plaintiffs still cannot plausibly allege that a reasonable consumer would regard the resulting citric acid and sodium citrate as not natural. In other words, Plaintiffs' claims fail as a matter of law because they do not, and cannot, plausibly allege that the presence of citric acid and sodium citrate renders the No Artificial

Statements misleading to a reasonable consumer. While the citric acid and sodium citrate might be produced using chemical reactions with synthetic agents, Plaintiffs "do[ ] not allege that the resulting citric acid contains synthetic agents." *Valencia*, 2024 WL 1158476, at *6. Instead, Plaintiffs allege that the citric acid was derived through a synthetic process using "industrial fermentation" and "mold (Aspergillus niger)" under "industrial conditions," allegedly resulting in unspecified "impurities." CCAC ¶¶ 99, 108. Due to this assumed industrial processing of the citric acid, Plaintiffs allege the phrase No Artificial Statements is misleading. CCAC ¶¶ 4, 14, 94, 99–108, 111, 123–125. However, no reasonable consumer is misled by the Products' labels.

"To be misleading under § 349 or § 350, the defendant's conduct must have been likely to mislead a reasonable consumer acting reasonably under the circumstances." *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409 (ARR) (RLM), 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) (unpublished) (citation modified). "[I]t is 'well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.'" *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)). "Accordingly, plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.'" *Id.* (citation modified). That is, "Plaintiffs must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (citation modified); *see also Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016) ("The term 'likely' indicates that deception must be probable, not just possible."). "Courts examining misleading product claims often rely on common sense observations and judicial experience." *Van Orden v. Hikari Sales U.S.A., Inc.*, No. 1:22-CV-504-MAD-DJS, 2023 WL 5336813, at *3 (N.D.N.Y. Aug. 18, 2023).

*Valencia* is dispositive. In *Valencia*, the court addressed and rejected the same theory of deception that Plaintiffs advance here. Specifically, the *Valencia* court held that the phrase "All Natural" on Snapple beverage products would not mislead a reasonable consumer as a matter of law. 2024 WL 1158476, at *6. Like Plaintiffs, the plaintiff in *Valencia* "describe[d] the citric acid

as a 'synthetic ingredient' but describe[d] no respect in which the citric acid derived from Aspergillus niger differs chemically from the citric acid derived from citrus fruits." *Id.* As a result, "a reasonable consumer acting reasonably would regard . . . citric acid derived from Aspergillus niger—itself a natural product"—as natural, not unnatural. *Id.*

The *Valencia* court further explained, "[a] reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic." *Id.*; *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) (dismissing GBL claims challenging "natural" labeling of pet food because the plaintiff does not allege that "the Products are composed of unnatural ingredients" and "a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the Products"); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) ("It is far more misleading to call a product 'natural' when the defendant has introduced unnatural ingredients than it is to call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process."), *aff'd sub nom. Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020).

Put simply, a reasonable consumer does not consider citric acid derived from a natural source to be artificial, even if it is produced through industrial processes. *See, e.g.*, *Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *6 (S.D.N.Y. Jan. 19, 2021) (finding plaintiff had not plausibly alleged that ingredients are artificial where there were no allegations that ingredients were not derived from natural sources); *Jackson v. SFC Glob. Supply Chain, Inc.*, No. 3:20-CV-1072-DWD, 2021 WL 3772696, at *2 (S.D. Ill. Aug. 25, 2021) ("[M]erely asserting that [the ingredients] are highly processed does not provide a plausible claim of artificiality.").

This principle was recently reaffirmed in *Karabas v. TC Heartland LLC*, 770 F. Supp. 3d 454 (E.D.N.Y. 2025), *appeal withdrawn*, No. 25-942, 2025 WL 1993635 (2d Cir. May 2, 2025). In *Karabas*, plaintiff alleged that the label statement "100% Natural" was false and misleading due to erythritol and stevia extract, which allegedly were produced through "synthetic processes

undertaken in industrial factories." *Id.* at 466. In granting defendant's motion to dismiss, the court explained "[n]o reasonable consumer would conclude that a product contains artificial ingredients merely because it is produced 'in industrial factories' using 'synthetic processes.'" *Id.* at 467. The court further noted that "most consumer goods are produced" this way. *Id.*; *see, e.g.*, *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 760 (W.D. Mo. 2015) (rejecting the definition of "natural" as a product "existing [in] or produced by nature" "because the Chips are processed foods, which of course do not exist or occur in nature"); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (observing in dismissing a challenge to "All Natural" pasta that "the reasonable consumer is aware that Buitoni Pastas are not springing fully-formed from Ravioli trees and Tortellini bushes" (citation modified)).

*Peters* applies the same principle to citric acid. There, the court explained that "[a] reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic." *Peters*, 2026 WL 2622455, at *16 (quoting *Karabas*, 770 F. Supp. 3d at 467). Applying that reasoning, the court concluded that the plaintiff "fails to plausibly allege that citric acid, a naturally occurring ingredient which is processed and could retain trace amounts of synthetic materials, would mislead a reasonable consumer." *Id.* at *17.

So too here. The mere fact that an ingredient is produced through industrial or synthetic processes does not render it artificial in the eyes of a reasonable consumer. Plaintiffs' allegations about industrial fermentation, chemical processing, and unspecified "impurities" do not plausibly establish that the resulting citric acid or sodium citrate is artificial. CCAC ¶¶ 99, 108. As *Valencia*, *Karabas*, and *Peters* illustrate, allegations about how an ingredient is manufactured do not, without more, establish that a reasonable consumer would regard the resulting ingredient as unnatural.

Plaintiffs' reliance on two decades-old FDA warning letters does not cure this pleading deficiency. CCAC ¶ 123. *Peters* rejected the same attempt to use FDA warning letters to bolster a claim that citric acid rendered a product's labeling misleading: "Plaintiff cites to non-binding FDA

warning letters in an attempt to bolster her claim, but the FDA's guidance is irrelevant to the reasonable consumer analysis." *Peters*, 2026 WL 2622455, at *17. That reasoning applies here: the warning letters do not establish how a reasonable consumer would understand the challenged label statements, and FDA's views do not necessarily reflect those of a reasonable consumer. *See N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (concluding that a product's labeling did not mislead consumers where there was "no extrinsic evidence that the perceptions of ordinary consumers align with [FDA] labeling standards").

Indeed, FDA "guidance" or "informal policy" does not carry the "force of law[.]" *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *10 (E.D.N.Y. Aug. 29, 2013); *Podpeskar v. Dannon Co., Inc.*, No. 16-CV-8478 (KBF), 2017 WL 6001845, at *3–4 (S.D.N.Y. Dec. 3, 2017) (noting FDA policy was "informal" and declining to include FDA's interpretation as part of reasonable consumer analysis). Plaintiffs' reliance on two FDA warning letters is even less persuasive. Warning letters reflect case-specific concerns and do not constitute the agency's official or binding position. *See* Sipos Decl ¶ 8, Ex. G (FDA's Regulatory Procedures Manual), available at https://www.fda.gov/media/71878/download. As the FDA itself explains, a warning letter "is informal and advisory" and does not necessarily represent the agency's final position. *Id.* And, in any event, the CCAC does not allege that the citric acid used in the Products is from the same source or produced in the same way as the citric acid ingredient that was at issue in these warning letters regarding unrelated products. CCAC ¶ 122. Therefore, even accepting Plaintiffs' allegations as true, the fact that the FDA issued two warning letters over two decades ago regarding the use of "All Natural" with citric acid does not establish that the No Artificial Statements challenged here would mislead a reasonable consumer.

Because Plaintiffs have not plausibly alleged that the No Artificial Statements would mislead a reasonable consumer, their claims should be dismissed under New York law and the parallel laws of California, Illinois, and Pennsylvania.[3]

---

[3] *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (applying the reasonable consumer standard to claims under California's UCL, CLRA, and FAL); *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 862 (N.D. Ill. 2021) (requiring a plaintiff asserting an ICFA claim to plausibly

**3. Plaintiffs' Claims are Preempted.**

While the "reasonable consumer" defense disposes of Plaintiffs' claims in full, the Complaint is also expressly preempted under the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343-1 *et seq*. Because Plaintiffs seek, through this lawsuit, to impose labeling requirements on the Products that are different from—and, indeed, inconsistent with—the food labeling requirements established by the Federal Food, Drug & Cosmetic Act ("FDCA") and its implementing regulations, their claims are preempted.

The NLEA, enacted in 1990, amended the Food, Drug, and Cosmetic Act ("FDCA") and aimed to "strengthen the [FDA's] legal authority to require nutrition labeling on foods." H.R. Rep. No. 101-538 (1990), as reprinted in 1990 U.S.C.C.A.N. 3336, 3337 (1990 WL 259223). The NLEA's purpose was to create uniform national standards regarding the labeling of food. *Alce v. Wise Foods, Inc.*, No. 17 CIV. 2402 (NRB), 2018 WL 1737750, at *4 (S.D.N.Y. Mar. 27, 2018). To implement Congress's goal of uniformity, the NLEA contains an express preemption provision that bars any state law requirements "not identical" to the NLEA's corresponding label requirements. 21 U.S.C. § 343-1(a). NLEA preemption bars any non-identical labeling requirement, whether imposed via state statute or through litigation-based efforts. *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008); *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 130 (E.D.N.Y. 2018) ("[F]ederal requirements that preempt state law requirements also preempt common law duties.").

The term "not identical" under the NLEA means "that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] . . . [a]re not imposed by or contained in the applicable [federal statute or regulation] .

allege that a reasonable consumer would be deceived by the defendant's conduct); *Kerr v. State Farm Mut. Auto. Ins. Co.*, No. CV 18-309, 2018 WL 5809989, at *5 (W.D. Pa. Nov. 6, 2018) (explaining that a deceptive act under Pennsylvania's UTPCPL is one "likely to deceive a consumer acting reasonably under similar circumstances"); *see also Seljak v. Pervine Foods, LLC*, No. 21 CIV. 9561 (NRB), 2023 WL 2354976, at *13 (S.D.N.Y. Mar. 3, 2023) ("While the New York, California, and Illinois statutes differ in some ways, the 'core element of each of plaintiffs' causes of action is the existence of a false statement or deceptive act' that would have misled a reasonable consumer.")

. . or [d]iffer from those specifically imposed by or contained in the applicable [federal statute or regulation].” 21 C.F.R. § 100.1(c)(4).

Accordingly, a consumer protection lawsuit must be dismissed under Rule 12(b)(6) if it seeks to impose any new or different labeling requirement than federal law requires. *See, e.g.*, *In re PepsiCo*, 588 F. Supp. 2d at 533, 535 (reasoning that “state law cannot impose obligations other than what federal law requires” and dismissing NY GBL claims at the pleading stages that sought to impose disclosures not required by federal law); *Alce*, 2018 WL 1737750, at *8 (dismissing NY GBL claims on preemption grounds); *Colella*, 348 F. Supp. 3d at 137 (same).

As discussed above, FDA regulations “expressly permit a manufacturer to indicate the ‘characterizing flavor’ of a food product, and set forth exactly how the product’s ‘characterizing flavor’ is to be described on the product’s ‘label, labeling, and advertising.’” *Dvora v. Gen. Mills, Inc.*, No. CV 11-1074-GW PLAX, 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011) (quoting 21 C.F.R. § 101.22(i)). And so here, Plaintiffs seek to hold PepsiCo liable for not labeling the Products as “artificially flavored” when federal regulations would prohibit such a label if the characterizing flavors of the Products are not artificial. To the extent Plaintiffs seek to impose labeling inconsistent with the federal flavoring regulations, their claims are preempted.

Because Plaintiffs’ state-law claims “would effectively require [PepsiCo] to include additional or different information on a federally approved label,” the claims are preempted and must be dismissed. *Ivie*, 961 F. Supp. 2d at 1042.

### B. The Hydration Theory of Deception Fails.

#### 1. Plaintiffs Have Not Plausibly Alleged the Hydration Representation is False.

Plaintiffs’ CCAC should be dismissed to the extent it rests on the Hydration Representation because the cited articles do not plausibly support Plaintiffs’ claim that “Hydrates Better Than Water” is false for “most consumers” who are “not engaged in sustained exertion.” CCAC ¶ 171. Plaintiffs’ theory depends on their categorical assertion that “[f]or a consumer who is not sweating, the Products provide no additional hydration over water whatsoever” (*id.* ¶131), but their sources

identify, at most, a gap in research addressing that population. Plaintiffs incorrectly characterize the research as establishing no hydration advantage for those consumers. The Court should disregard that inaccurate characterization.

Courts have repeatedly dismissed false advertising claims when the scientific materials cited in the complaint do not plausibly support the alleged falsity of the challenged representations. For example, in *Kardovich v. Pfizer, Inc.*, the plaintiffs alleged that multivitamin labels touting health benefits were "'false, misleading and deceptive' because they [we]re 'affirmatively contradicted' by the scientific evidence cited in the complaint." 97 F. Supp. 3d at 137 (internal brackets and citation omitted). The court dismissed the claims at the pleading stage, finding "a disconnect between the scope of [the plaintiff]'s claim and the conclusions" of the articles, and concluding that the articles did "not lend facial plausibility" to claims that the labels were false or deceptive. *Id.* at 138–39.

And when documents referenced in the complaint undermine conclusory allegations, the Court likewise need not accept those allegations as true. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (explaining that courts "need not accept as true allegations contradicting documents that are referenced in the complaint"); *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146–47 (2d Cir. 2011) (explaining "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true"). For example, in *Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943 (N.D. Cal. 2014), the plaintiffs alleged that the defendants falsely represented that their juice products were "raw" and "uncooked," because pressure treatment deprived the juice of nutritional value to a degree comparable to cooking but the cited articles did not support that alleged deception. *Id.* at 944. In dismissing the complaint, the court reasoned that "[a] plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts." *Id.* (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89, *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001)). Thus, Plaintiffs

cannot rely on the articles as the factual foundation for their theory while disregarding what those articles actually say.

Here, the articles cited in the CCAC do not support Plaintiffs' asserted limitation on the Products' comparative hydration benefits. The first article expressly acknowledges: "While we determined that it is indeed a better way to rehydrate than water *we were unable to find studies focused on untrained individuals who performed significantly less training volume than their trained counterparts*."[4] CCAC ¶ 131 n.51. In other words, the article affirmatively acknowledges a comparative hydration benefit, then identifies a limitation in the populations studied. It does not report that studies of less-active consumers found no benefit; it reports that the authors could not find studies focused on those consumers. And the authors' inability to find studies involving less-active, untrained individuals does not plausibly establish that the Products lack a comparative hydration benefit for those consumers. Plaintiffs cannot convert an absence of research into affirmative evidence that consumers who are not sweating receive "no additional hydration over water whatsoever" from the Products. CCAC ¶ 131. As *Kardovich* explains, "where plaintiffs point to scientific studies that they allege actually disprove a product's claims, such a stark disconnect between the scientific studies and the claims made . . . is fatal to plaintiffs' complaint." *Kardovich*, 97 F. Supp. 3d at 138; *see also Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 457–58 (E.D.N.Y.2013) (distinguishing between product claims that lack scientific support and those that are actually contradicted by scientific evidence).

The second article, likewise, does not support this allegation. Its statements that "Gatorade may not be necessary for people who engage in light or short-duration exercise" and that "plain water is usually the best choice" address whether a sports drink is necessary or appropriate in those circumstances—not whether the Products hydrate better than water.[5] CCAC ¶ 131 n. 52. Plaintiffs

---

[4] Claire Paddock, *Nick Ruggiero & Dan Smith, Gatorade: Do "Average Joes" Need to Hydrate Like Professional Athletes?*, UNIV. OF DEL. (Feb. 27, 2018), https://sites.udel.edu/coe-engex/2018/02/27/gatorade-do-average-joes-need-to-hydrate-like-professional-athletes/ (last visited October 29, 2026).

[5] Lindsey DeSoto, *Does Gatorade Effectively Hydrate You?*, HEALTH (Jan. 16, 2026), https://www.health.com/does-gatorade-hydrate-you-11754011 (last visited October 29, 2026).

improperly equate the absence of a need for a sports drink with the absence of a comparative hydration benefit. Moreover, paragraph 132 of the CCAC purports to quote directly from the website: "There isn't strong research showing the benefits of sports drinks for low-intensity exercise lasting less than an hour." But that statement appears nowhere in the article. Plaintiffs' reliance on it only underscores the lack of support for their contrived theory. As the court explained in *Bermudez v. Colgate-Palmolive Co.*, No. 1:21-CV-10988 (JLR), 2023 WL 2751044 (S.D.N.Y. Mar. 31, 2023), "[w]here a plaintiff has chosen to use scientific studies in an effort to raise plausible inferences that marketing is deceptive, and the studies cited do not support her claims, the plaintiff has not plausibly pleaded her claims." *Id.* at *8.

The CCAC therefore does not plausibly allege that the Hydration Representation is false or misleading, and the claims predicated on that theory should be dismissed.

**2. No Reasonable Consumer is Misled by the Hydration Representation.**

Viewed in its context, "Hydrates Better Than Water" would not mislead a reasonable consumer. Even taking Plaintiffs' allegations as true for purposes of Rule 12, their theory depends on a reading that divorces this statement from the sports-hydration context their own allegations describe. When applying the reasonable consumer standard as discussed above, courts follow "the general principle that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (quoting *Bell v. Publix Super Mkts. Inc.*, 982 F.3d 468, 477 (7th Cir. 2020)). A statement must be read in context. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1001 (7th Cir. 2018) (applying ICFA) ("An allegedly deceptive act must be viewed 'in light of all the information available to plaintiffs.'"). Indeed, "context can be crucial in determining whether a reasonable consumer would have been misled or deceived[.]" *Foster v. Whole Foods Mkt. Grp., Inc.*, No. 23-285-cv, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023) (summary order) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)). Relevant context includes information on both the front and back of the product's packaging. *See Bell*, 982 F.3d at 476 ("[T]he context of the entire packaging is relevant.").

In *Moore*, the Ninth Circuit affirmed dismissal of a consumer protection action challenging the label "100% New Zealand Manuka Honey" on Trader Joe's store-brand honey. The court concluded that, viewed in context, the label was unlikely to deceive a reasonable consumer into believing that the honey was derived exclusively from the Manuka flower. 4 F.4th at 876–77. In making that determination, the court explained that relevant context when a label claim is ambiguous could be information on the back label, the product's relative price, or general knowledge about how the product is made. *Id.* at 882–85. Indeed, consumers are expected to know the general nature of the products they purchase. *Id.*

*Becerra* is particularly instructive here. In *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019), the court explained that a reasonable consumer would understand the word "diet" on a soda label as a comparative claim about caloric content, not a promise that the soda promotes weight loss generally. *Becerra*, 945 F.3d at 1230. Emphasizing the product category, the court explained that "[d]iet soft drinks are common in the marketplace and the prevalent understanding of the term in that context is that the 'diet' version of a soft drink has fewer calories than its 'regular' counterpart." *Id.* Indeed, that contextual inquiry extends beyond express label statements: "information available to a consumer is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging." *Moore*, 4 F.4th at 882.

Applying this approach, the court in *Kennard v. Kellogg Sales Co.*, No. 21-CV-07211-WHO, 2022 WL 4241659 (N.D. Cal. Sept. 14, 2022), rejected the theory that "VEGGIE" falsely conveyed that meat-alternative products were made primarily from vegetables. *Id.* at *1, *4. The court explained that packaging photographs depicting the products as vegetarian meat substitutes supported that meaning rather than the plaintiff's proposed vegetable-content interpretation. *Id.* at *4. In other words, the court explained that the challenged statement must be assessed in light of the product category and packaging, not divorced from those contextual cues.

Here, Plaintiffs' own allegations undercut their proposed reading of the Hydration Representation. They do not allege that "Hydrates Better Than Water" is categorically false.

Indeed, they expressly acknowledge that "Gatorade replaces the electrolytes, sodium, and carbohydrates that sweat removes." CCAC ¶ 130. Instead, they identify circumstances in which the asserted advantage allegedly does not apply: "[a]bsent sustained and/or excessive sweating" and "[f]or a consumer who is not sweating." CCAC ¶¶ 130–131. But allegations that consumers drink the Products without exercising do not show that reasonable consumers understand the label to promise better hydration than water even when they are not exercising.

As in *Moore, Becerra,* and *Kennard,* the challenged language should be read in context and in light of reasonable consumers' presumed general knowledge about the nature of the products. The Products are part of sports beverage product lines, and their packaging reinforces that sports-hydration context. On all Products, "Hydrates Better Than Water" appears alongside an image of an athlete drinking the beverage. CCAC ¶ 72; *see also* Sipos Decl. ¶ 2, Ex. A (Lower Sugar Gatorade Product Label); ¶ 3, Ex. B (Gatorade Powder Label); ¶ 4, Ex. C (Classic Gatorade); ¶ 5, Ex. D (Gatorade Zero). The labels further identify the Products as electrolyte beverages or thirst quencher powders, and the back labels display the Gatorade Sports Science Institute logo. *Id.* Plaintiffs' own allegations confirm that the sports-hydration context is not merely PepsiCo's characterization: each named Plaintiff alleges a desire "to purchase sports hydration drinks." CCAC ¶¶ 23, 28, 34, 40, 47, 53, 59, 65. Plaintiffs also identify advertisements featuring baseball players, basketball players, and other athletes and allege that the Products are "targeted at 'active consumers,'" reinforcing the exercise-related message conveyed by the labels. *Id.* ¶¶ 81, 85–86, 90. Moreover, the CACC describes Gatorade's long, well-known history dating to its founding in 1965 in conjunction with the University of Florida's football team. *Id.* ¶ 74. After decades of Gatorade's presence on the market, consumers are generally familiar with what Plaintiffs identify as the "sports hydration drink industry" generally and Gatorade in particular, which Plaintiffs describe as a "monolith" within this industry. *Id.* ¶¶ 72, 73.

Together, the full product label, advertisements, product history, and consumers' general knowledge of the Products undermine Plaintiffs' interpretation of the Hydration Representation. Just as reasonable consumers in *Becerra* did not interpret "diet" to promise weight loss generally,

reasonable consumers here do not read "Hydrates Better Than Water" on these sports hydration drinks as a promise of superior hydration regardless of activity or sweating. Accordingly, the Court should reject Plaintiffs' theory that assigns the claim a meaning untethered to the sports-hydration context Plaintiffs themselves describe.

Because Plaintiffs have not plausibly alleged that the Hydration Representation would mislead a reasonable consumer, their claims premised on that representation should be dismissed under New York law and the parallel laws of California, Illinois, and Pennsylvania, as explained above. *See supra* at IV.A(2).

### C. Failure to Sufficiently Plead Their Statutory Claims Necessarily Compels Dismissal of the Complaint's Remaining Claims.

Plaintiffs' additional claims should also be dismissed, as they rely on the same alleged misrepresentations underlying Plaintiffs' consumer protection claims. *See Cosgrove v. Blue Diamond Growers*, No. 19 CIV. 8993 (VM), 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020) (dismissing claims for breach of express warranty, fraud, and unjust enrichment, and explaining if there is no misrepresentation, "all of [the] [p]laintiffs' claims must be dismissed"); *Wynn*, 2021 WL 168541, at *6 (explaining that claims "which largely hinge on the same theory of misleading business practices rejected by the [c]ourt above, all fail as a matter of law.").[6] As the court explained in *Barreto v. Westbrae Natutral, Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021), common law claims based on the same alleged misrepresentations fail where the "Court has already

[6] This rule is well-established across California, Illinois, and Pennsylvania: when claims for unjust enrichment, warranty, and fraud are predicated on the same alleged conduct as statutory claims, they all rise and fall together. *See In re Plum Baby Food Litig.*, No. 4:21-CV-00913-YGR, 2024 WL 1354447, at *9 (N.D. Cal. Mar. 28, 2024) ("When common law claims of fraud and unjust enrichment are based on the same conduct on related statutory claims, these claims rise and fall together."), *aff'd,* No. 24-2766, 2025 WL 1200700 (9th Cir. Apr. 25, 2025); *Horti v. Nestle HealthCare Nutrition, Inc.*, No. 21-CV-09812-PJH, 2022 WL 2441560, at *9 (N.D. Cal. July 5, 2022) (warranty claim fails absent actionable misrepresentation); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019) (unjust enrichment and fraud claims fail with ICFA claim); *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 674 (N.D. Ill. Mar. 31, 2016) (warranty claims fail absent actionable deception); *Lisowski v. Henry Thayer Co*., Inc., 501 F. Supp. 3d 316, 339 (W.D. Pa. 2020) (unjust enrichment rises or falls with underlying claim), *on reconsideration on other grounds in part,* No. CV 19-1339, 2021 WL 1185924 (W.D. Pa. Mar. 30, 2021); *Steamfitters Loc. Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 934 (3d Cir. 1999) ("The same principles that lead us to conclude that plaintiffs' [statutory] claims were properly dismissed lead to the inevitable conclusion that their state law claims must also fail.").

determined that [Plaintiffs] ha[ve] failed to allege that the [P]roduct's labeling would be likely to deceive or mislead a reasonable consumer[.]" *Id.* at 806 (dismissing claims for breach of express warranty, common law fraud, and unjust enrichment). Accordingly, Plaintiffs' failure to plausibly allege their claims of consumer deception is equally fatal to their express warranty, unjust enrichment, and fraud claims.

**D. Plaintiffs' Remaining Claims Independently Fail.**

As explained above, Plaintiffs are purchasers of the Products in New York, California, Pennsylvania, and Illinois, and bring these claims on behalf of a putative nationwide class and separate state subclasses. *See supra* at II.C. Accordingly, PepsiCo addresses each claim under the laws of these states. This approach is consistent with choice-of-law principles, which require courts to analyze fraud, unjust enrichment, and warranty claims under the law of the state where the alleged injury occurred or the product was purchased.[7] *See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *19 (fraud governed by the place of injury, typically plaintiff's residence); *Price v. L'Oreal USA, Inc.*, No. 17 CIV. 0614(LGS), 2017 WL 4480887, at *4 (S.D.N.Y. Oct. 5, 2017) (unjust enrichment claim analyzed under laws of New York and California for subclasses); *Solak v. Hain Celestial Grp., Inc.*, No. 317CV0704LEKDEP, 2018 WL 1870474, at *10 (N.D.N.Y. Apr. 17, 2018) (breach of warranty claims analyzed under laws of state of purchase); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) (law of the state of purchase applies to warranty claims).

Under New York, California, Pennsylvania, and Illinois law, each of these claims also fails on independent grounds.

**1. Express Warranty.**

Plaintiffs' breach of warranty claim should be dismissed because they failed to properly plead pre-suit notice to PepsiCo. New York law requires that the buyer, "within a reasonable time

[7] "In diversity jurisdiction cases such as this, it is well settled that a federal court must look to the choice of law rules of the forum state." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998*); In re Coudert Bros.*, 673 F.3d 180, 186 (2d Cir. 2012) (explaining that a federal district court "sitting in diversity must generally apply the choice of law rules of the state in which it sits").

after he discovers or should have discovered any breach[,] notify the seller of breach or be barred from any remedy." *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (citation modified) (quoting N.Y. U.C.C. Law § 2-607(3)(a) (McKinney)).[8] To adequately plead the pre-suit notice requirement, "plaintiff[s] must provide factual allegations—such as the date and method plaintiff[s] sent a pre-suit notice—supporting the contention that [they] notified [the] defendant of the alleged breach within a reasonable time." *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021).

When a plaintiff discovers or should have discovered an alleged breach "is the relevant trigger under New York law" with respect to the timeliness of an express warranty claim. *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 87 (S.D.N.Y. 2020). "The question is not whether [plaintiff] gave defendant enough notice before filing suit; it is whether they gave reasonably prompt notice after they discovered or should have discovered the alleged breach." *Tyman v. Pfizer, Inc.*, 16 Civ. 6941 (LTS) (BCM), 2017 WL 6988936, at *22 (S.D.N.Y. Dec. 27, 2017) (citation modified), *report and recommendation adopted*, No. 16 CV 6941-LTS-BCM, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018). Without this crucial information, Plaintiffs' breach of warranty claim fails. Indeed, courts in this District routinely dismiss express warranty claims at the motion to dismiss stage where notice is insufficiently pled. *See, e.g.*, *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 112–13 (S.D.N.Y. 2021) (dismissing express warranty claim where plaintiff failed to allege that it served notice within a reasonable time).

Here, Plaintiffs allege "Defendants received timely notice of the breach, as alleged above, and in any event had actual knowledge of the nonconformity," and claim any "additional notice requirement is excused as futile, because Defendants have continued the conduct notwithstanding

[8] A similar notice requirement applies for breach of express warranty claims under California, Illinois and Pennsylvania law. *See Crown Cell Inc. v. Ecovacs Robotics, Inc.*, 641 F. Supp. 3d 843, 847 (N.D. Cal. 2022) (explaining that California law requires notice "within a reasonable time after he or she discovers or should have discovered any breach[.]"); *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 720 (N.D. Ill. 2023) (citing 810 ILCS 5/2-607(3)(a), which requires notice within a reasonable time after discovery of the breach); *Crockett v. Luitpold Pharm., Inc.*, No. CV 19-276, 2020 WL 433367, at *12 (E.D. Pa. Jan. 28, 2020) (recognizing notice as a prerequisite to a warranty claim and explaining that its purpose is to allow the seller to resolve the alleged breach before litigation).

notice." CCAC ¶ 224. This appears to refer to paragraph 192, where Plaintiffs allege that, on or around September 29, 2025, May 26, 2026, and June 22, 2026, counsel notified PepsiCo in writing, by certified mail, return receipt requested, and demanded that PepsiCo rectify the conduct. However, these allegations are deficient for multiple reasons.

*First*, two of the notice dates—June 22, 2026 and May 26, 2026—are actually the dates PepsiCo was served with complaints, not pre-suit notices. The June 22, 2026 date is tied specifically to Plaintiff Michael Walsh, as alleged in CCAC ¶ 46 ("Michael Walsh alleges to have 'provided Defendants with notice of his claims on June 22, 2026'"). However, this is not pre-suit notice; it is the date PepsiCo was served with Walsh's initial Complaint—after the lawsuit was filed. *Walsh v. PepsiCo, Inc.*, No. 7:26-cv-05191 (S.D.N.Y.), Dkt. No. 9 (Waiver of Service sent on June 22, 2026). The May 26, 2026, date presumably refers to Plaintiff Leam, as this is the date of service for that complaint filed May 21, 2026. *Leam v. PepsiCo, Inc.*, No. 7:26-cv-04258 (S.D.N.Y.), Dkt. No. 5 (Waiver of Service sent May 26, 2026).

For Plaintiffs Walsh and Leam, the mere filing of a Complaint does not constitute adequate notice to PepsiCo for breach of warranty.[9] *See Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *6 (N.D. Ill. Mar. 1, 2022) (explaining, a plaintiff "cannot satisfy the pre-suit notice obligation by filing suit"); *Rudy v. Family Dollar Stores*, 583 F. Supp. 3d 1149, 1162 (N.D. Ill. 2022) ("The notice requirement is intended to 'encourage pre-suit settlement negotiations.' That purpose would be eviscerated if a party could satisfy the notice requirement by filing suit . . . ." (citation omitted)); *Basmadjian v. Realreal, Inc.*, No. C 17-06910 WHA, 2018 WL 2761857, at *2 (N.D. Cal. June 8, 2018) (citing *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (explaining "that notice must be pre-suit and cannot be contemporaneous with filing suit, because post-suit notice would not serve the objective of providing notice in the first instance")); *Kacsuta v. Lenovo (United States) Inc.*, No. SACV 13-00316-CJC(RNBx), 2013 WL 12126775, at *1 (C.D.

[9] Plaintiff Leam alleges to have purchased the Products in Illinois while Plaintiff Walsh alleges that he made his purchases in California. CCAC ¶¶ 55, 42.

Cal. July 16, 2013) ("The Ninth Circuit has held that in order to effectuate these objectives, notice must be given 'pre-suit.'").

*Second*, as to the September 29, 2025, notice, paragraph 192 does not identify the Plaintiffs on whose behalf counsel sent that notice or whose particular claims it addressed. Paragraph 224's assertion that PepsiCo received timely notice "as alleged above" does not supply that missing connection. And generalized awareness of similar complaints does not substitute for notice of a particular Plaintiff's claims. Indeed, "the fact that Defendant may have been aware of similar claims involving [its] labels did not put Defendant on notice of Plaintiff's particular claims." *Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474 (BKS/TWD), 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016); *Niles v. Beverage Mktg. USA, Inc.*, No. 19-CV-1902 (SJF)(ARL), 2020 WL 4587753, at *6 (E.D.N.Y. Apr. 16, 2020) ("Even if the plaintiffs were correct that the defendant companies were on notice that there is an issue with the product by virtue of [a different] lawsuit, the plaintiffs have not pointed to any law that relieves them of their own obligation to provide notice before seeking a remedy."), *report and recommendation adopted*, No. 19-CV-1902 (SJF/ARL), 2020 WL 3445730 (E.D.N.Y. June 24, 2020); *see also Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 719 (E.D. Pa.2013) (analyzing analogous sections of California and Pennsylvania law, among others, and finding that third party complaints failed to satisfy notice requirement); *Davis v. Ricola USA, Inc.*, No. 22-CV-3071, 2022 WL 4131588, at *5 (C.D. Ill. Sept. 12, 2022) ("The notice requirement 'is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer.'"). Accordingly, the reference to an unidentified Plaintiffs' September 29 notice, coupled with PepsiCo's alleged general knowledge, does not adequately plead compliance with the pre-suit notice requirement as to each Plaintiffs' breach-of-warranty claim.

*Third*, Plaintiffs offer no information regarding when they allegedly discovered the Products' labels were misleading, making it impossible to determine whether PepsiCo was notified "within a reasonable time." *See Grossman*, 516 F. Supp. 3d at 283 (finding that the allegation "within a reasonable time after they knew or should have known of [defendant's] breach . . .

[plaintiff] placed [defendants] on notice . . . which they refused to do" was "insufficient to plead pre-suit notice"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *27 (dismissing breach of warranty claims where plaintiffs "fail[ed] to allege [they] even provided sufficient notice . . ., let alone notice within a reasonable time after discovery of breach"); *Am. Fed'n of State Cnty. & Mun. Emps. (AFSCME) v. Ortho–McNeil–Janssen Pharm., Inc.*, No. 08–CV-5904, 2010 WL 891150, at *6 (E.D. Pa. Mar. 11, 2010) (in context of a motion to dismiss, Plaintiff must "plead, at a minimum, . . . that [she] provided reasonable notification . . . to state a viable claim for recovery . . . or be barred from any remedy"); *Basmadjian*, 2018 WL 2761857, at *2 (explaining "to avoid the dismissal of a breach of warranty claim, a plaintiff must plead that he or she provided notice of the breach of warranty to the seller within a reasonable time after discovery of the breach" (citing *Alvarez*, 656 F.3d at 932)). The conclusory allegation that PepsiCo "received timely notice" (CCAC ¶ 192) is insufficient. *See Harvey v. WK Kellogg Co*., No. 2:25-CV-3984 (SJB) (JMW), 2025 WL 3706665, at *5 (E.D.N.Y. Dec. 22, 2025) (holding that the plaintiff's warranty claim failed where allegations were "conclusory assertions that notice was provided to [d]efendants").

Accordingly, Plaintiffs' breach of express warranty claim should be dismissed.

**2. Fraud.**

Plaintiffs' fraud claim also fails because they offer only conclusory assertions of fraud, without the supporting facts Rule 9(b) requires. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud or mistake."). "Fraud claims stating mere conclusory allegations are not sufficient." *Fitzpatrick v. Fitzpatrick*, No. 2:12-CV-2938 GEB AC, 2013 WL 4678879, at *4 (E.D. Cal. Aug. 30, 2013). Rather, "[f]raud claims must state 'the who, what, when, where, and how' of the misconduct alleged, and allegations 'must set forth what is false or misleading about a statement, and why it is false.'" *Id.; Silvester v. Selene Fin., LP*, No. 18-CV-02425 (PMH), 2021 WL 861080, at *2 (S.D.N.Y. Mar. 8, 2021) (quoting *Backus v. U3 Advisors, Inc.*, No. 1:16-CV-08990-GHW, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017)). Rule 9(b) requires this specificity "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged [.]" *Swartz v. KPMG LLP*, 476 F.3d

756, 764 (9th Cir. 2007). The requirement also serves “to prevent false or unsubstantiated charges.” *Cooper v. Broadspire Servs., Inc.*, No. Civ. A. 04–5289, 2005 WL 1712390, at *5 (E.D. Pa. July 20, 2005).

The indispensable elements of a fraud claim include: (1) misrepresentation (such as false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damages. *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 857 (N.D. Cal. 2012).[10] In other words, “defendant's knowledge of falsity is an essential element of a fraud claim[.]” *Strugala v. Flagstar Bank, FSB*, 839 F. App’x 69, 72 (9th Cir. 2020); *Rudy*, 666 F. Supp. 3d at 723–24. And beyond just alleging knowledge of falsity, “Rule 9(b) also requires plaintiffs to ‘allege facts that give rise to a strong inference of fraudulent intent.’” *Twohig v. Shop-Rite Supermkts., Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021); *Rudy*, 666 F. Supp. 3d at 723–24.

Plaintiffs have clearly failed to meet this burden. Plaintiffs claim, in conclusory fashion, that PepsiCo’s “conduct was intentional, malicious, oppressive, and fraudulent, and was committed, authorized, adopted, approved, or ratified by Defendants’ officers, directors, and managing agents.” CCAC ¶ 247. But these allegations are merely legal conclusions unsupported by any specific factual allegations and thus must be disregarded. *See Iqbal*, 556 U.S. at 679. At most, Plaintiffs make “vague allegations” of the circumstances surrounding the supposed fraud which do not meet Rule 9(b)'s heightened pleading requirement. *See Elias*, 903 F. Supp. 2d at 858.

For example, Plaintiffs assert that PepsiCo “either knew the representations were false when they made them or would have known had they undertaken the diligence the law expects of them,” but offer no facts supporting that asserted knowledge. CCAC ¶¶ 140, 238, 243. Instead, Plaintiffs, for the most part, rely on general references to an “advertising campaign,” the “product launch,” and endorsements by “athletes and influencers” to support an inference of fraudulent

[10] The elements of fraud are materially similar across Illinois, Pennsylvania, and New York. *See Kinman v. Kroger Co.*, 604 F. Supp. 3d 720, 731 (N.D. Ill. 2022); *Sevin v. Kelshaw*, 611 A.2d 1232, 1236 (Pa. Super. Ct. 1992); *Wynn*, 2021 WL 168541, at *7.

intent.[11] *Id.* ¶¶ 240, 244. But advertising the Products and prominently displaying the challenged claims do not support an inference that PepsiCo knew those claims were false, much less a strong inference that it intended to defraud consumers as required by Rule 9(b). *See, e.g.*, *Troutt v. Mondelez Glob. LLC*, 637 F. Supp. 3d 606, 616 (S.D. Ill. 2022) (rejecting fraud claim under Rule 9(b) where "there is no allegation that [defendant] intentionally mislabeled the cookies to defraud consumers"); *Davis*, 2022 WL 4131588, at *6 (rejecting allegations that fraudulent intent "evinced by [defendant's] knowledge that the Product was not consistent with its representations" as "conclusory").

Indeed, Rule 9(b) demands Plaintiffs allege "facts that give rise to a strong inference of fraudulent intent[.]" *Almazan v. Almazan*, No. 14-CV-311 AJN, 2015 WL 500176, at *9 (S.D.N.Y. Feb. 4, 2015). As confirmed by *Davis*, "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendant['s] 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis*, 297 F. Supp. 3d at 337 (quoting *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *25).

Courts have similarly dismissed claims in other cases where the plaintiff failed to allege enough facts to give rise to a sufficiently strong allegation of fraudulent intent. *See, e.g.*, *Quiroz v. Beaverton Foods, Inc.*, No. 17-cv-07348 (NGG), 2019 WL 1473088, at *10–11 (E.D.N.Y. Mar. 31, 2019) (no fraudulent intent based on allegations that defendant's " 'No Preservatives' label was false" even though defendant "employs food scientists who are familiar with the basic properties of citric acid" so "[d]efendant knew that citric acid was a preservative"); *Sarr*, 2020 WL 729883, at *9 (no fraudulent intent based on allegation that a public "brochure indicate[d] that the public mistakenly believed refrigerated potatoes were 'just prepared,' and that by invoking the term 'fresh' despite knowing about consumers' mistaken belief, BEF wanted consumers to 'persist in believing something which is not true' "); *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 250 (S.D.N.Y. 2021) (finding no fraudulent intent because allegation that defendant's "intent

[11] And Plaintiffs' illogical attempt to show that PepsiCo intentionally defrauded consumers while simultaneously explaining PepsiCo's alleged scheme to those very consumers is strained at best. CCAC ¶¶ 141–143.

is evinced by its failure to accurately identify the Product on the front labels, when it knew its statements were neither true nor accurate and could mislead consumers" was "a general, conclusory claim [and] insufficient to adequately state a claim for fraud").

Because Plaintiffs have not alleged any facts beyond the desire to sell the Products, Plaintiffs' fraud claim should be dismissed.

**3. Unjust Enrichment.**

*First*, California law does not recognize unjust enrichment as a stand-alone cause of action. *See Durell v. Sharp HealthCare*, 183 Cal. App. 4th 1350, 1370 (2010); *Aguilar v. Ocwen Fin. Corp.*, No. CV 14-7675-MWF(SSX), 2015 WL 12659913, at *5 (C.D. Cal. Jan. 27, 2015) ("California law recognizes no separate claim for relief of 'unjust enrichment.'" (citation modified)). Rather, unjust enrichment is synonymous with restitution, which is a form of relief that attaches to a recognized cause of action. *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010); *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010). Therefore, since Plaintiffs' "unjust enrichment" claim is pled as a separate cause of action, it should be dismissed under California law. *ValveTech v. Aerojet Rocketdyne, Inc.*, 2018 WL 4681799, at *5 (W.D.N.Y. Sept. 28, 2018) ("This Court will go along with the substantial precedent finding that no cause of action for unjust enrichment exists in California.").

*Second*, under New York law, even when pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss if plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action. *Howze v. Mondelez Glob. LLC*, No. 22-CV-351 (JLS), 2023 WL 122307, at *7 (W.D.N.Y. Jan. 5, 2023). Courts in the Second Circuit have recognized that an unjust enrichment claim cannot survive when it simply duplicates another cause of action. *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199, 2016 WL 5372794, at *18 (E.D.N.Y. Sept. 26, 2016); *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 467 (S.D.N.Y. 2019) ("[A] plaintiff may plead unjust enrichment in the alternative, but where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed."). And an unjust enrichment claim is duplicative if it "relies on the same conduct that forms the basis of

[the plaintiff's] other claims." *Id.* Here, Plaintiffs' unjust enrichment claim relies on the same theory as their consumer protection claims. *See* CCAC ¶¶ 229–231. Accordingly, Plaintiffs' unjust enrichment claim should be dismissed as duplicative under New York law.

*Third*, under Pennsylvania law, the "benefit" must be conferred by the plaintiff directly on the defendant—indirect benefits bestowed by third parties will not support a claim for unjust enrichment. *See Schmidt*, 972 F. Supp. 2d at 721 (dismissing unjust enrichment claims where plaintiffs "fail[ed] to show any way in which their money transferred from their own pockets to Defendant's."); *Bridgestone/Firestone, Inc. v. Carr's Tire Serv., Inc.*, Civ. A. No. 90–7106, 1992 WL 365512, at *16 (E.D. Pa. Nov. 30, 1992); *see also Samuels v. Hendricks*, 445 A.2d 1273, 1276 (Pa. Super. Ct. 1982) ("[T]he mere fact that [defendant] may have indirectly benefited from [plaintiff's] performance is not sufficient to impose upon her a duty to make restitution."). Here, Plaintiff Mahoney, the only plaintiff residing in Pennsylvania, alleges to have made her purchases at Walmart. CCAC ¶ 61. Accordingly, PepsiCo received no direct benefit. Therefore, Plaintiffs' unjust enrichment claims should be dismissed under Pennsylvania law.

*Fourth*, Plaintiffs' unjust enrichment claim fails because an adequate remedy at law precludes equitable relief under California, Illinois, Pennsylvania, and New York law. *See Sepanossian v. Nat'l Ready Mix Concrete Co.*, 97 Cal. App. 5th 192, 207–08 (2023) (claim for restitution unnecessary because plaintiff's legal remedies under UCL were adequate); *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81 (2008) (affirming dismissal of unjust enrichment claim asserted with GBL claim because "plaintiffs have an adequate remedy at law"); *Fish Net, Inc. v. ProfitCenter Software, Inc.*, No. CIV.A. 09-5466, 2011 WL 1235204, at *9 (E.D. Pa. Mar. 31, 2011) ("An unjust enrichment claim is subject to the 'basic tenet of equity jurisprudence' that 'if an adequate remedy at law exists, equitable relief will not be granted.'"); *Trujillo v. Apple Comput., Inc.*, 581 F. Supp. 2d 935, 941 (N.D. Ill. 2008) (to succeed on a claim for unjust enrichment under Illinois law, a plaintiff must establish that he "has no adequate remedy at law, the defendant has unjustly retained a benefit to plaintiff's detriment, and that retention violates fundamental principles of justice, equity, and good conscience").

Here, Plaintiffs do not allege that they lack an adequate remedy at law or explain why the "actual, compensatory, and statutory damages" they seek would fail to compensate them fully for their alleged injuries. CCAC at Prayer for Relief. That omission is particularly significant because Plaintiffs seek only monetary relief and identify no injury that an award of damages could not redress. Without allegations explaining why damages would be inadequate, Plaintiffs have not pleaded a basis for equitable relief.

For all these reasons, Plaintiffs' unjust enrichment claim should be dismissed.

## V. CONCLUSION

For the foregoing reasons, PepsiCo respectfully requests that this Court dismiss Plaintiffs' Consolidated Class Action Complaint with prejudice.

Dated: October 29, 2026

Respectfully submitted,

ASHURST PERKINS COIE US LLP

By: */s/ Charles C. Sipos*

Charles C. Sipos, Pro Hac Vice
charles.sipos@ashurstperkins.com
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Tel: +1.206.359.8000
Fax: +1.206.359.9000

Emily B. Cooper
emily.cooper@ashurstperkins.com
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Tel: +1.212.262.6900
Fax: +1.212.977.1649

Natalie K. Sanders, Pro Hac Vice
natalie.sanders@ashurstperkins.com
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067-1721
Tel: +1.310.788.9900
Fax: +1.310.788.3399

## WORD COUNT CERTIFICATION

I hereby certify that this brief complies with the word count limit set forth in the Court's October 21 Order (Dkt No. 43). In determining compliance, I relied on the word count function of the word processing system used to prepare this document. This memorandum of law contains 12,925 words, excluding the table of contents, table of authorities, caption, and signature block.

*By: /s/ Charles C. Sipos*
Charles C. Sipos